INTERNATIONAL UNDERWATER CONTRACTORS, INC. *vs.*
NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Suffolk.   May 18, 1979. — September 12, 1979.

Present: KEVILLE, BROWN, & PERRETTA, JJ.

*Practice, Civil,* Summary judgment. *Duress. Contract,* Interpretation. *Release,* Validity.

The judge in a civil action erred in entering summary judgment for the defendant on the basis that the plaintiff had signed a release in settlement of its claim against the defendant where the plaintiff's affidavits raised an issue of material fact with respect to whether the signing of the release was voluntary or under economic duress. [343-347]

CIVIL ACTION commenced in the Superior Court on September 29, 1975.

The case was heard by *Ford, J.,* on a motion for summary judgment.

*Francis V. Matera (Richard W. Schwartzman* with him) for the plaintiff.

*Roscoe Trimmier, Jr., (John M. Harrington, Jr.,* with him) for the defendant.

BROWN, J. The plaintiff, International Underwater Contractors, Inc. (IUC), appeals from the entry of summary judgment for the defendant, New England Telephone and Telegraph Company (NET).

The plaintiff, which had entered into a written contract with the defendant to assemble and install certain conduits under the Mystic River for a lump sum price of $149,680, to be paid semimonthly in instalments in proportion to the progress of the work, seeks additional compensation in a total amount of $811,816.73 for a major change in the system from that specified in the contract.

The plaintiff asserts that the change, which was necessitated by delays caused by the defendant, forced the work to be performed in the winter months instead of during the summer, as originally bid, making the equipment originally specified unusable. This major change was made, the plaintiff alleges, at the direction of the defendant, and upon the defendant's assurances that it would pay the resulting additional costs.

The defendant moved for summary judgment with a supporting affidavit, wherein it argued in defense a release signed by the plaintiff settling the additional claim for a total sum of $575,000. The plaintiff, which submitted countervailing affidavits in opposition to the motion, argues that the release is not binding because it was signed under economic duress.

A special master appointed to hear summary judgment motions found that "as a matter of law, the economic duress required to vitiate the subject release was not present." Summary judgment was entered for the defendant, and the plaintiff's motions for reconsideration and to vacate judgment were denied. The instant appeal ensued.

Summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553 (1976). "[G]ranting summary judgment is error when the party opposing the motion has alleged facts relating to the transaction on which suit has been brought which raise issues entitling him to a trial." *Id.* at 556. *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co., ante* 178, 182 (1979).

We must, therefore, examine the standard for economic duress and the pleadings and affidavits in this case to determine whether issues of material fact have been raised, and whether the facts set forth by the plaintiff, if true, would show economic duress invalidating the release.

A release signed under duress is not binding. *Shewan & Sons* v. *United States,* 73 Ct. Cl. 49, 83-94 (1932). "Coercion sufficient to avoid a contract need not, of course, consist of physical force or threats of it. Social or economic pressure illegally or immorally applied may be sufficient." *Struck Constr. Co.* v. *United States,* 96 Ct. Cl. 186, 220 (1942). See *Dana* v. *Kemble,* 17 Pick. 545 (1836); *Governor Apartments, Inc.* v. *Carney,* 342 Mass. 351, 354-355 (1961).

To show economic duress (1) a party "must show that he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will." 13 Williston, Contracts § 1617, at 704 (3d ed. 1970). "As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values." *Id.*

The elements of economic duress have also been described as follows: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Urban Plumbing & Heating Co.* v. *United States,* 408 F.2d 382, 389 (Ct. Cl. 1969), cert. denied, 398 U.S. 958 (1970), quoting from *United States* v. *Bethlehem Steel Corp.,* 315 U.S. 289, 301 (1942). "Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." 13 *Williston, supra* § 1617, at 708. Thus "[i]n order to substantiate the allegation of economic duress or business compulsion . . . [t]here must be a showing of acts on the part of the defendant which produced [the financial embarrassment]. The assertion of duress must be proved by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *W.R. Grimshaw Co.* v. *Nevil C. Withrow Co.,* 248 F.2d 896, 904 (8th Cir. 1957).

Here the affidavit submitted in behalf of the defendant stated that amendments to the agreement were executed in January and February, 1974, which provided for "additional compensation for certain additional work,"[1] and that "[a]fter IUC submitted billings totalling approximately $811,816.73, substantially more than any amount previously agreed to by NET, a series of meetings were had between representatives of IUC and NET in an attempt to resolve the matter." In contrast, affidavits submitted on behalf of the plaintiff stated that "the commencement of the work contracted to be performed by IUC was delayed by [NET] because of permits, changed conditions, etc., forcing the work to be performed in the winter months in lieu of the summer months as bid"; that, as a result, "[NET] required a complete redesign of the procedure for installing this duct bank system and its appurtenances"; that "IUC could no longer perform this work for the same price"; and that "commitments, assurances and promises were made by [NET] that a full settlement would be made of all audited amounts (reviewed by [NET])." The plaintiff's affidavits further asserted that twice in March, 1974, "agreement was reached [with representatives of NET] for the monies due for the work performed to date and assurances were given that an amendment to the contract would be issued" and that at those meetings "IUC made known the fact that it had already expended large amounts of money for which it had not been paid by [NET] and was suffering hardships in meeting its financial obligations"; that IUC and representatives of NET "repeatedly reached agreements as to amounts and methods for payment, and each time [NET] Administration rejected these agreements"; that during this period, for almost an entire year, NET urged IUC to continue the work, stating that a resolution of the dispute over price would be forthcoming and "that it was not

---

[1] It is not clear whether this is the same, or part of the same, work involved in the dispute.

344                                    8 Mass. App. Ct. 340

International Underwater Contractors, Inc. *v.* New England Tel. & Tel. Co.

[NET] policy to have its contractors lose money"; and that in reliance on these assurances IUC continued the work to completion. The plaintiff's affidavits further asserted that in November, 1974, representatives of NET and IUC reached an agreement for a total amount to be paid of $775,000, which was recommended to and rejected by the NET board; that finally in December, 1974, NET offered $575,000, which IUC was forced to take "on a take-it or leave-it basis"; that at that time "the bank had refused to extend any more credit and the IUC cash position was overdrawn"; that the plaintiff's severe financial condition was "a result of the failure of [NET] to meet its commitments," and that if the company had not accepted the offer of settlement, "it would not have been able to survive the demands of [its] creditors."

Thus the affidavits show a dispute as to whether NET gave assurances to IUC that if IUC made the change in installation of equipment and continued to perform that work to completion, NET would pay the additional costs and would not permit IUC to lose money. The affidavits also raise a question whether IUC's financial difficulties were attributable to such acts of the defendant and whether the plaintiff was forced because of such difficulties to accept a disproportionately small settlement which it would not otherwise have accepted.

Such allegations are material and, if true, would make out a case for duress. Here, if the plaintiff's allegations are true, the defendant's acts in (1) insisting on a deviation from the contract and repeatedly assuring the plaintiff that it would pay the additional cost, which was substantially greater than the original, if the plaintiff would complete the work and (2) then refusing to make payments for almost a year caused the plaintiff's financial difficulties. Such acts could be considered "wrongful" acts and indications of bad faith. Compare *Aircraft Associates & Mfg. Co.* v. *United States,* 357 F.2d 373, 378-379 (Ct. Cl. 1966), in which after the plaintiff had bid on and entered into a contract to purchase excess planes from

the government, government officials removed parts of the planes. They assured the plaintiff that the government would compensate it for the parts, but the government did not do so. The result was the plaintiff's inability to make its payments under the contract, which the government then threatened to terminate unless the plaintiff should sign a release of its claim. The release thus signed by the plaintiff was held invalid. Also, compare *Struck Constr. Co.* v. *United States*, 96 Ct. Cl. 186 (1942), in which, because government inspectors refused to approve sample work which complied with contract specifications, the plaintiff was compelled to use more cement and spend more for labor than the contract required and, under threat of termination of the contract, agreed not to increase its prices. The agreement was held not binding. See also *Freund* v. *United States*, 260 U.S. 60, 67, 70 (1922); *Urban Plumbing & Heating Co.* v. *United States*, 408 F.2d at 389.[2] Contrast *W.R. Grimshaw Co.* v. *Nevil C. Withrow Co.*, 248 F.2d at 904, where the plaintiff, which had other alternatives, voluntarily agreed to proceed with additional work and the evidence did not show that the defendant took advantage of, or even had knowledge of, the plaintiff's financial condition.

In the present case, the fact that the assurances may have been given by NET's representatives and never agreed to by the company's board of directors does not lessen the company's responsibility. "[The test of good faith should be the same for an entity which must act through agents as for an individual acting for himself. If the aggregate of the actions of all of the agents would, if all done by one individual, fall below the standard of good

---

[2] Although these cases involved claims against the United States, it is to be noted that: "[W]hen the duress has been exerted by one clothed with official authority . . . less evidence of compulsion or pressure is required . . . . But the principle is applicable in all cases according to the nature and exigency of each." *Aircraft Associates & Mfg. Co.* v. *United States*, 357 F.2d at 380, quoting from *Robertson* v. *Frank Bros.*, 132 U.S. 17, 23 (1889).

346 8 Mass. App. Ct. 340

International Underwater Contractors, Inc. *v.* New England Tel. & Tel. Co.

faith, the entity for whom the various agents acted should be held to have violated that standard." *Struck Constr. Co.* v. *United States*, 96 Ct. Cl. at 221.

The unequal bargaining power of the two parties (both in terms of their comparative size and resources as well as the financial difficulties into which the plaintiff had fallen, allegedly because of the defendant's acts) is a factor to be considered in determining whether the transaction involved duress. *Shewan & Sons* v. *United States*, 73 Ct. Cl. at 92. *Aircraft Associates & Mfg. Co.* v. *United States*, 357 F.2d at 379. In addition, the disparity between not only the plaintiff's alleged costs ($811,816) but also the amount NET's engineers had recommended in November, 1974, to the board for settlement ($775,000) and the amount offered on a "take-or-leave-it" basis in December and accepted in settlement ($575,000) raises the possibility there may have been a disproportionate exchange of values and should be considered in determining whether the release was signed under duress. 13 Williston, *supra* § 1617, at 704.

The defendant argues that it did not have to settle the case but could have "exercised its lawful right to litigate the rights of the parties under the agreement" and that "[d]oing or threatening to do what a party has a legal right to do cannot form the basis of a claim of economic duress." See *Willett* v. *Herrick*, 258 Mass. 585, 604, cert. denied, 275 U.S. 545 (1927). However, if the assertions of the plaintiff are true, the defendant did more than assert a legal right, as its acts created the financial difficulties of the plaintiff, of which it then took advantage. The defendant also argued that the plaintiff cannot be found to have acted under duress because it had an adequate remedy at law. See *Willett* v. *Herrick*, 258 Mass. at 603. However, "if recourse to courts of law is not quick enough to save the victim's business or property interests, there is no adequate legal remedy." 13 Williston, *supra* § 1617, at 709. Here, if the allegations of the plaintiff are true, the plaintiff, as a result of the defendant's wrongful acts,

was not "free either to rely on [its] legal rights or ... voluntarily to accept the terms proposed...." *Willett* v. *Herrick, supra* at 603.

The facts in the case *W.R. Grimshaw Co.* v. *Nevil C. Withrow Co., supra,* relied on by the defendant, are distinguishable from the facts asserted in the affidavits here in several ways: there, the plaintiff had three alternatives, and the defendant not only acted in good faith, but also was not responsible for the plaintiff's financial condition and had no knowledge of it.[3]

Deciding as we do, we find it unnecessary to reach the plaintiff's other arguments.

In summary, we find that the affidavits raise issues of material fact, and we are therefore unable to say as matter of law that the signing of the release was voluntary. Accordingly, it was error to enter summary judgment.

*Judgment reversed.*

---

[3] The case of *Stewart M. Muller Constr. Co.* v. *New York Tel. Co.*, 50 App. Div. 2d 580 (1975), aff'd 40 N.Y.2d 955 (1976), cited by the defendant, is not persuasive, as it involved a threat to terminate a contract in a different fact situation from that set out in the plaintiff's affidavits in this case. Here, if the assertions of the plaintiff are true, the defendant not only caused delays in the work, but also persuaded the plaintiff to vary from the terms of the contract by assurances it would pay the additional cost, which it did not do.