John VASAPOLLI, Richard Solomon, Edward S. Ferguson, Sally E. Ferguson, George Hamilton, Charlotte Miller, Aaron Miller, Michael Miranda, Jr., Douglas Bassett, Kurt A. Lunden, Richard L. Dussault, Mary R. Dussault, David Stern, Anthony T. Zambuto, Debra J. Zambuto, Michael Tomsho, Ann Tomsho, Donald Booth, Erna Hooten, Daniel Issenberg, Herbert Bello, and Deanna Bello, Plaintiffs,

v.

Stephen M. ROSTOFF, David Rostoff, James I. Harris, Patriot Real Estate Development Corporation, Harvey Gertel, STE Development Corporation, Canterbury Village, Inc., as General Partner of Canterbury Village Limited Partnership, Peter Hicks, Trustee d/b/a Leslie F. MacNeil, Jr. Associates, The 36–40 Cohasset Avenue Associates, The 54–58 River Street Associates, Regency Arms Development Corporation, Woodland Hills General Partnership, The 32 Dean Avenue Associates, Paul Revere Development Corporation, Stephen M. Rostoff d/b/a Brookhaven Funding Company, Stephen M. Rostoff d/b/a Canterbury Village Funding Company, Stephen M. Rostoff d/b/a Regency Funding Co., Cowesset Avenue Associates Funding Company, Stephen M. Rostoff d/b/a Woodland Funding Co., Stephen M. Rostoff d/b/a Pine Ridge Funding Company, Stephen M. Rostoff d/b/a The River Street Associates Funding Company, Stephen M. Rostoff d/b/a Sea Mist Funding Co., Richard S. Rostoff, Oceanvest Inc., Point East Associates, Stephen M. Rostoff d/b/a Carriage Hill Funding Co., Stephen M. Rostoff d/b/a North Providence Funding Co., 10–12 Josephine Street Association, Louden Road Development Corporation, Federal Deposit Insurance Corporation, as Liquidating Agent/Receiver of the Bank for Savings, Peter B. Finn as Trustee of the Pine Ridge Development Trust, Peter B. Finn as Trustee of Carriage Hill Estates Development Trust, Defendants.

Civ. A. No. 92–11501–K.

United States District Court, D. Massachusetts.

Aug. 31, 1993.

Chester A. Janiak, Elizabeth J. Maillett, Michael B. Weinberg, Burns & Levinson, Boston, MA, for plaintiffs John Vasapolli, Richard Solomon, Edward S. Ferguson, Sally E. Ferguson, George Hamilton, Charlotte Miller, Aaron Miller, Michael Miranda, Jr., Douglas Bassett, David Stern, Anthony T. Zambuto, Debra J. Zambuto, Michael Tomsho, Ann Tomsho, Donald Booth, Erna Hooten, Daniel Issenberg, Herbert Bello, Deanna Bello, Kurt A. Lunden.

Mitchel S. Ross, Kaye, Fialkow, Richmond & Rothstein, Chester A. Janiak, Elizabeth J. Maillett, Michael B. Weinberg, Burns & Levinson, Boston, MA, for plaintiffs Richard L. Dussault, Mary R. Dussault.

John F. Tierney, Lora M. McSherry, Tierney, Kalis, Adamopoulos & Lucas, Salem, MA, for defendants Stephen M. Rostoff, David Rostoff, Neil Rostoff, James I. Harris, Patriot Real Estate Development Corp., STE Development Corp., The 54–58 River Street Associates, Woodland Hills Gen. Partnership, The 32 Dean Ave. Associates, Paul Revere Development Corp. dba Brookhaven Funding Co., Stephen M. Rostoff dba Canterbury Village Funding Co. and Regency Funding Co., Cowesset Ave. Associates Funding Co., Stephen M. Rostoff dba Woodland Funding Co., Pine Ridge Funding Co., The River Street Associates Funding Co., Sea Mist Funding Co., Carriage Hill Funding Co. and North Providence Funding Co., 10–12 Josephine Street Ass'n.

Robert A. Jutras, Sheehan, Schiavoni & Mooradian, Haverhill, MA, for defendants Harvey Gertel, Louden Road Development Corp., Regency Arms Development Corp., Peter B. Finn, as trustee of Pine Ridge Development Trust and Carriage Hill Estates Development Trust.

John A. Christopher, Spitzer, Christopher, Gelineau & Arvanites, Salem, MA, for defendant Richard S. Rostoff.

Jan D. Silverman, Wakefield, MA, for defendant Point East Associates.

Martin P. Desmery, A. Van C. Lanckton, Craig & Macauley, Boston, MA, for defendant F.D.I.C., as Liquidating Agent/Receiver of the Bank for Savings.

## Memorandum and Order

KEETON, District Judge.

In this civil action, plaintiffs assert claims based on an alleged scheme to induce plaintiffs to purchase condominium units through fraud and coercive conduct at closings. The Bank for Savings is alleged to be a participant in the scheme. The Federal Deposit Insurance Corporation ("FDIC"), as receiver for The Bank for Savings ("BFS"), moves for summary judgment.

Now before the court are: (1) FDIC's motion for summary judgment with supporting memorandum and affidavit (Docket Nos. 4–6, filed January 22, 1992); (2) plaintiffs' statement of facts, memorandum in opposition, and supporting materials (Docket Nos. 11–13, filed March 8, 1993; Docket Nos. 14–15, filed March 9, 1993); (3) FDIC's reply (Docket No. 18, filed April 9, 1993); (4) plaintiffs' motion for additional discovery with supporting affidavit (Docket Nos. 9 and 10, filed March 8, 1993); and (5) FDIC's opposi-

tion. The court heard oral argument on these motions on August 30, 1993.

## I.

As a preliminary matter, plaintiffs have failed to comply with Local Rule 56.1, requiring a statement of disputed facts. Plaintiffs provide a general statement of facts "giving rise to genuine issues for trial." (Docket No. 11.) Plaintiffs do not attempt to state what specific facts are disputed and prevent summary judgment in favor of FDIC. Plaintiffs' "statement of material facts giving rise to genuine issues for trial" falls far short of a statement of material facts that are themselves disputed. Local Rule 56.1.

In any event, the facts stated by plaintiffs appear to be as follows. Each plaintiff (either alone or with another plaintiff) purchased a condominium and secured financing from BFS. Some plaintiffs purchased more than one unit. In each case, first mortgage financing was obtained from BFS. It does not appear disputed that plaintiffs signed the notes in the amounts stated by FDIC (with the exception of plaintiff Solomon, discussed in Section II.C, *infra*).

Plaintiffs allege that defendants, including BFS, are responsible for misrepresentations made in connection with a fraudulent scheme to induce plaintiffs to purchase the condominiums. These misrepresentations concerned: whether the purchase price reflected a "discounted price," alleged agreements to repurchase at the end of one year if the units could not be resold, amounts of condominium fees and real estate taxes, renovations on the condominium units, fair market values, and the terms of the financing notes (in particular, plaintiffs contend that they were told that they were signing notes at a long-term fixed rate when, in fact, the notes were for one or three year periods).

In addition, plaintiffs allege that the circumstances of the closings were coercive. Plaintiffs contend that they were not provided an opportunity to review documents before the closing and were given limited notice in advance of the closing date. Plaintiffs also contend that they were urged to move things along and sign papers without reading them.

In moving for summary judgment, FDIC contends that plaintiffs' claims are barred by 12 U.S.C. § 1823(e) and the *D'Oench* doctrine, discussed in detail below.

## II.

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). A court may allow a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112 (1st Cir.1990).

"The moving party bears the initial burden of averring an absence of evidence to support the nonmoving party's case." *Lawrence v. Northrop Corp.*, 980 F.2d 66, 68 (1st Cir. 1992) (internal quotation marks and citations omitted). Once this burden has been met, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would have the burden of proof at trial." *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1171 (1st Cir.1988). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party and 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *Wynne*, 976 F.2d at 794 (citations omitted).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists." *Griggs–Ryan*, 904 F.2d at 115. Rather, the party opposing summary judgment must set forth "hard evidence of a material factual dispute; the opposition cannot be conjectural or problematic

but must have substance. Evidence which is merely colorable, or is not significantly probative will not preclude summary judgment." *Id.* (citations and internal quotation marks omitted).

## III.

### A. § 1823(e) and *D'Oench* Doctrine

■ The *D'Oench* doctrine reflects a federal policy "to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1104 (11th Cir.1990), citing *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 457, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942). As a practical matter, "[n]either the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401–402, 98 L.Ed.2d 340 (1987).

> The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [FDIC] relied in insuring the bank was or was likely to be misled.

*D'Oench, Duhme & Co.*, 315 U.S. at 460, 62 S.Ct. at 680.

■ Under *D'Oench*, bank borrowers or guarantors are prohibited "from using secret or unrecorded side agreements to defend against efforts by the FDIC ... to collect on promissory notes that it has acquired from a failed bank." *Fleet Bank of Maine v. Matthews*, 795 F.Supp. 492, 496 (D.Me.1992). This principle was codified by Congress in 12 U.S.C. § 1823(e):

> No agreement which tends to diminish or defeat the interest of [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against [FDIC] unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

This 4–fold requirement is to be read literally. In addition, courts may not "engraft an equitable exception upon the plain terms of the statute." *Langley*, 484 U.S. at 94, 108 S.Ct. at 403.

> While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute.

*Id.*

The First Circuit has declined to distinguish between defenses and affirmative claims against the FDIC for purposes of applying § 1823(e) and *D'Oench*. *Timberland Design, Inc. v. First Service Bank for Sav.*, 932 F.2d 46, 49 (1st Cir.1991).

> To distinguish between affirmative claims and defenses for purposes of applying the *D'Oench* doctrine would reduce the protection offered by the doctrine to a nullity.... Realizing that such a distinction would elevate form over substance, most courts have recognized that *D'Oench* operates to bar affirmative claims as well as defenses which are premised upon secret agreements.

*Id.*

■ *D'Oench* bars claims against the FDIC based on misrepresentation and fraudulent inducement.

*See Timberland,* 932 F.2d at 47, 49–50 (1st Cir.1991) (claims for deceit, negligent misrepresentation, breach of fiduciary duty, breach of contract and unfair and deceptive practices); *McCullough v. Federal Deposit Ins. Corp.,* 987 F.2d 870, 874 (1st Cir.1993) (misrepresentations based on nondisclosure as well as affirmative misrepresentation); *In Re 604 Columbus Ave. Realty Trust,* 968 F.2d 1332, 1346–47 (fraudulent inducement, as opposed to fraud in the factum).

For claims of misrepresentation or fraudulent inducement, the "secret agreement" barred by *D'Oench* is an alleged implied warranty by the bank concerning the misrepresentation. For example, in *McCullough,* the borrower alleged that the bank failed to disclose that the property purchased was subject to a Notice of Responsibility issued by the Massachusetts Department of Environmental Quality Engineering. The Notice purported to require removal of hazardous waste from the property. The First Circuit held that *D'Oench* barred the plaintiff's claims that the bank's failure to reveal this information (1) constituted a misrepresentation and (2) was an unfair and deceptive act under the Massachusetts Consumer Protection Act. The court reasoned that these claims were "analogous" to an allegation that the bank violated an implied warranty to disclose the Notice. *McCullough,* 987 F.2d at 873. Since no such warranty was in writing, the court concluded that this "warranty" was a secret agreement barred by *D'Oench. See McCullough,* 987 F.2d at 873–74. *See also Langley,* 484 U.S. at 92–93, 108 S.Ct. at 401–402.

The court also determined that the claimed innocence of the defendant, *i.e.,* the defendant's state of mind, is irrelevant to a determination that *D'Oench* applies. *Id.* at 1347–48.

*D'Oench* and section 1823(e) have been held to bar claims that a bank:

failed to disclose a material fact, *id.;*

misrepresented the "size and character" of the property involved, *604 Columbus,* 968 F.2d at 1346 (discussing *Langley,* 484 U.S. at 93–94, 108 S.Ct. at 402–403); or

misrepresented the amount of consideration paid under a promissory note, *id.* at 1347.

## B.   Application of *D'Oench* and section 1823(e).

### 1.   Application to plaintiffs' claims of fraudulent inducement.

■ Plaintiffs contend that *D'Oench* and section 1823(e) cannot be applied to their fraudulent inducement and misrepresentation claims.

Although plaintiffs arguments are not all clear, plaintiffs appear to argue that the misrepresentations do not constitute an "agreement" because plaintiffs did not enter into an explicit agreement concerning the misrepresentations. Plaintiffs' argument is not materially different from an argument that any fraudulent inducement or misrepresentation could not have been reduced to writing. The First Circuit has consistently held that claims of fraudulent inducement or misrepresentation are barred under section 1823(e) and *D'Oench.*

Plaintiffs allege that they were the victims of a fraudulent scheme. If true, holding plaintiffs responsible for notes executed as a result of the fraud appears harsh. Nevertheless, to the extent that plaintiffs wished to rely on an (allegedly false) appraisal, representations about market value, representations about the property, or representations concerning the terms of the mortgage notes, plaintiffs' means of protection was to require that any warranty be in writing. *See McCullough,* 987 F.2d at 872–74. Plaintiffs were in a better position than depositors or the FDIC to prevent this fraud—by securing their own appraisal or valuation of the property, or by making sure that any warranty concerning the value of the property was in writing as part of the loan agreement. Plaintiffs did not do this. Accordingly, I conclude that *D'Oench* and section 1823(e) bar much of the substance of plaintiffs' claims.

Plaintiffs next argue that *D'Oench* does not apply because BFS's misrepresentations appear in the official records of the bank. Plaintiffs argue that the false appraisals and

irregular nature of the loan agreements (*i.e.,* the short due dates on the notes together with the large amount loaned) should have put FDIC on notice of the "unusual nature" of the loans. (Docket No. 12 at 27.) Even assuming this to be true, I conclude that it hardly suggests that the requirements of section 1823(e) were met or that the agreement on which plaintiffs seek to rely (warranties concerning market value, etc.) is reflected in the records of the bank.

> *See Federal Savings & Loan Ins. Corp. v. Gordy,* 928 F.2d 1558, 1564 (11th Cir.1991) (implied warranty by bank that bank's financial statements were true barred by *D'Oench* because alleged implied warranty was not in writing).

Plaintiffs point to no document reflecting any warranty made to plaintiffs or any written contract terms that BFS did not comply with. Accordingly, because *D'Oench* and section 1823(e) apply to misrepresentation and the requirements for a written agreement have not been met, I conclude that *D'Oench* bars plaintiffs claims based on fraudulent inducement and misrepresentation.

### 2. Duress.

#### a. D'Oench, section 1823(e), and claims of duress.

Plaintiffs contend that *D'Oench* does not bar a claim of duress. Plaintiffs rely primarily on *Desmond v. Federal Deposit Ins. Corp.,* 798 F.Supp. 829, 836–39 (D.Mass.1992) (Woodlock, J.). In *Desmond,* the court attempted to resolve an apparent split in authority over whether *D'Oench* bars a duress defense. To resolve the apparent split, the court distinguished between duress in the negotiating process and duress that is "external" to an agreement. For duress in the negotiating process, the court observed that

> [a] defaulting borrower could plead a bank's unyielding bargaining position as "duress"—for instance, a bank's threat to seize collateral of sentimental value if a borrower did not agree to pay by a certain date. Such claims would be estopped, because they derive from the bargaining process itself, from the positions the parties adopt and agreements they make in trying to exact concessions from one another.

*Id.* at 839. Similarly, the court in *Desmond* reasoned that "warranties as to value seem more naturally to fall within the confines of an agreement ... whether made false by affirmative misrepresentations or by material omissions...." and are, therefore, barred as "secret agreements" under *D'Oench* and section 1823(e). *Id.* at 836.

The court in *Desmond* described "external" duress as follows.

> [The borrower] alleges that [the bank] surreptitiously allowed a conflict of interest [with the borrower's attorney] to develop and then forced the attorney's withdrawal precisely in order to put pressure on Desmond to sign an agreement in haste and without counsel. [The borrower] alleges that [the bank] went outside of the terms of the agreement—the money owed, the collateral at stake, the time and methods of payment—to create a situation in which [the borrower] was unable to make contractually prudent choices. If [the borrower's] allegations are true, [the bank] did not simply put pressure on [the borrower] by imposing unreasonable time constraints, but rather tortiously deprived him of a meaningful opportunity to protect himself.

*Id.* Thus, for external duress (but not duress or misrepresentations that are part of the negotiating process), the court in *Desmond* concluded that *D'Oench* and section 1823(e) did not apply because the borrower did not enter into any side agreement (concerning counsel for the borrower). *Id.* The First Circuit has not determined whether *D'Oench* or section 1823(e) bar claims of duress. FDIC represents to the court that an appeal of the *Desmond* decision is now pending.

#### b. Plaintiffs' specific claims of duress.

■ For the following reasons, I conclude that plaintiffs present no genuine issue of material fact for a defense of duress. Accordingly, I need not determine if a defense of duress is barred by *D'Oench* or whether I should follow the reasoning of *Desmond.*

■ The defense of duress, under Massachusetts law, has been formulated in two

ways. One description of the defense is that the party claiming duress

> must show that he has been the victim of a wrongful or unlawful act or threat.... [S]uch act or threat must be one which deprives the victim of his unfettered will, ... [and, as a result,] the party threatened must be compelled to make a disproportionate exchange of values.

*Ismert & Assocs., Inc. v. New England Mut. Life Ins. Co.,* 801 F.2d 536, 548 (1st Cir.1986) (quoting *International Underwater Contractors, Inc. v. New England Tel. & Tel. Co.,* 8 Mass.App.Ct. 340, 393 N.E.2d 968, 970 (1979)).

■ A second description of the elements of a defense of duress is that the party claiming duress must show

> (1) That one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.

*Id.*

■ The Supreme Judicial Court of Massachusetts has stated the test more succinctly. "To avoid a contract on the basis of duress, a party must show that conduct by the other party caused him to enter into the contract under the influence of such fear as precludes him from exercising free will and judgment." *Coveney v. President & Trustees of College of Holy Cross,* 388 Mass. 16, 445 N.E.2d 136, 140 (1983) (internal quotations marks and citation omitted).

Plaintiffs base their duress contentions on claims that (1) the plaintiffs were misled to believe that the notes were long term and not short term, and (2) plaintiffs were hurried through closings and not given sufficient time to review the closing documents.

The first asserted basis presents an issue of misrepresentation or fraud, not duress. Accordingly, I reject plaintiffs' contention that the misrepresentations form a basis for plaintiffs' claims of duress.

For the following reasons, I also conclude that the second asserted basis does not present any trialworthy issue concerning a duress

defense that is not barred by *D'Oench* and section 1823(e).

First, the element of coercion is absent from an allegation of duress based on this ground. Plaintiffs present no evidence that they were subjected to "fear," *Coveney,* 445 N.E.2d at 140, of any kind. Rather, plaintiffs claim that they were tricked into having a profit motive and misled as to the terms of the agreement just before executing the mortgage notes.

> *See* 13 Williston on Contracts § 1604 (coercion required for duress defense; presence of profit motive, "however remote," dispels element of coercion).

Section 1823(e) and *D'Oench* bar claims based on fraudulent inducement by misrepresentation or nondisclosure. *See Langley,* 484 U.S. at 93–94, 108 S.Ct. at 402–403; *McCullough,* 987 F.2d at 872–74.

Although plaintiffs submitted voluminous affidavits and materials in support of their motion for summary judgment, there is no evidence that any of plaintiffs lacked free will when they signed their mortgage notes. Rather, plaintiffs set out claims that they signed the papers based on alleged fraudulent representations made by defendants.

At the conference, plaintiffs argued that they feared loss of deposits if they did not sign the loan agreements. As a preliminary matter, plaintiffs offer no support in the submitted materials for this contention. In any event, even if plaintiffs did fear the possible loss of deposits, there is no evidence that this deprived them of free will.

Finally, plaintiffs present no evidence to support a finding that plaintiffs had no alternative but to sign the mortgage notes. If plaintiffs had an adequate remedy in the courts, *e.g.,* seeking an order to enjoin a threatened foreclosure, plaintiffs cannot maintain a defense of duress. *See Carey v. Fitzpatrick,* 301 Mass. 525, 17 N.E.2d 882, 884 (1938). *See also Ismert,* 801 F.2d at 549. Here, there is no evidence to suggest that plaintiffs had no alternative but to sign and make payments under the notes.

### 3. Negligence.

█ Plaintiffs contend that their negligence claims are not barred by *D'Oench.* Plaintiffs rely exclusively on *New Connecticut Bank & Trust Co., N.A. v. Stadium Management Corp.,* 132 B.R. 205, 210 (D.Mass.1991). In *New Connecticut Bank,* the court held that *D'Oench* does not bar claims for negligent impairment of the value of collateral securing a loan. In the present case, however, plaintiffs assert that the bank negligently allowed them to be defrauded.

If accepted, plaintiffs argument would allow them to assert claims for negligent misrepresentation or negligently permitting plaintiffs to be defrauded, although barred from directly asserting claims based on fraud or misrepresentation. *See* cases cited *supra.* To the extent that *New Connecticut Bank* accurately describes the scope of *D'Oench,* I conclude that the claims for negligent impairment of collateral in *New Connecticut Bank* are distinguished from the negligence claims (involving fraud surrounding the agreement) in the present case. Any other result runs counter to the weight of authority. *See McCullough,* 987 F.2d at 873–74 & n. 4 (concluding that section 1823(e) bars claims for nondisclosure because they are "analogous" to claims for violation of an unwritten warranty). Accordingly, I conclude that *D'Oench* and Section 1823(e) bar the negligence claims asserted by plaintiffs against FDIC in this action, at least to the extent that those claims rest on alleged misrepresentations or fraud.

### 4. Fraud in the factum.

#### a. Generally.

█ Claims of fraud in the factum are not barred under *D'Oench* or section 1823(e). *See Langley,* 484 U.S. at 93–94 [108 S.Ct. at 402–403]; *604 Columbus,* 968 F.2d at 1346–47. *But see McLemore v. Landry,* 898 F.2d 996, 1002 (5th Cir.1990) (declining to read dictum in *Langley* as creating an exception to *D'Oench* for fraud in the factum).

█ Fraud in the factum has been defined as "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley,* 484 U.S. at 93, 108 S.Ct. at 402 (citing U.C.C. § 3–305(2)(c), Comment 7, 2 U.L.A. 241 (1977)). A "common illustration" is of a person tricked into signing a note believing that it is merely a receipt or some other document. *See* Mass.Gen.L. ch. 106 § 3–305(2)(c), Comment 7. A misrepresentation rising to the level of fraud in the factum has been described as (1) a misrepresentation causing the party to sign the document without knowledge of the "true nature". or "basic nature" of the document,

> *see Federal Deposit Ins. Corp. v. Caporale,* 931 F.2d 1, 2–3 n. 1 (1st Cir.1991) ("true nature"), *604 Columbus,* 968 F.2d at 1346–47 ("basic nature"),

(2) a misrepresentation causing the party to sign the document without knowledge of the "essential terms" of the note,

> *see 604 Columbus,* 968 F.2d at 1346–47, Mass.Gen.L. ch. 106 § 3–305(2)(c), Comment 7,

and (3) a misrepresentation that went to "the very character of the proposed loan agreement," rather than just to "the underlying terms," *see 604 Columbus,* 968 F.2d at 1346–47.

Once a party states a viable claim of fraud in the factum, that is, a claim of misrepresentation concerning the essential terms or basic nature of the document signed,

> [t]he test of the defense ... is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but also must have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.

Mass.Gen.L. ch. 106 § 3–305(2)(c), Comment 7.

In the context of claims asserted against FDIC and potentially barred by *D'Oench,* the federal courts have not been sympathetic to claims that a party was unable to know the terms of the agreement that the party signed. For example, one court observed that, even if a bank materially altered an agreement by filling in provisions left blank, *D'Oench* or section 1823(e) may bar claims of fraud in the factum based on that alteration. The court reasoned that the party " 'lent himself' to a scheme that could mislead federal bank examiners" by signing a partially blank promissory note.

See *Federal Deposit Ins. Corp. v. Plato,* 981 F.2d 852, 858 (5th Cir.1993). *Cf. Caporale,* 931 F.2d at 2–3 & n. 1 (similar reasoning concerning signing of blank notes; fraud in factum claim was rejected, however, on different grounds, *i.e.,* (1) that there was no dispute that plaintiffs understood the true nature of the note they signed and (2) that fraud in the factum was waived on appeal by failure to raise the argument in the trial court).

In the materials in support of the motion for summary judgment, FDIC argues that it is entitled to summary judgment over plaintiffs' claims of fraud in the factum only on the ground that plaintiffs understood the true nature of the agreements they signed.

**b. Plaintiffs' claims of fraud in the factum.**

Much of plaintiffs' argument in support of their claim of fraud in the factum relies on alleged misrepresentations about value of the property and appraisals. These contentions plainly concern fraudulent inducement rather than fraud in the factum, *i.e.,* misrepresentations about the value of the property purchased rather than the specific written terms in the agreements that plaintiffs signed.

The only misrepresentation advanced by plaintiffs that concerns the terms of any signed document are alleged misrepresentations about the duration of the notes—long-term or short-term. For the following reasons, I conclude that plaintiffs have not presented a genuine dispute over any issue of material fact based on this misrepresentation.

Plaintiffs cite no cases. where fraud in the factum has been asserted successfully over a contention that the claims or defenses are barred under *D'Oench* or section 1823(e). The only case that this court is aware of is *Federal Deposit Ins. Corp. v. Turner,* 869 F.2d 270, 73–74 (6th Cir.1989). In *Turner,* defendant Turner signed a guaranty that was partially blank. To secure Turner's signature, Turner was told that the UAB–Knoxville bank was to be audited. Turner was then asked to sign a guaranty for loans at UAB–Knoxville taken by certain entities controlled by Turner. The guaranty left blank the name of the debtor and the amount of the guaranty, but did name UAB–Knoxville. Later, "UAB–Knoxville" was erased with correcting fluid, and the name of a new bank was substituted. Rather than naming any entity controlled by Turner, the guaranty was filled in to name a different debtor. The amount of the guaranty was filled in over $2 million. *Id.* at 272. In short, Turner "signed the document to secure his own debts. Ultimately it was altered, as part of a fraudulent scheme, and used to secure the debts of a company in which he had no interest." *Id.* at 275.

*Turner* is readily distinguished from the present case. Here, no plaintiff contends that there was any misunderstanding (1) that the agreement signed was a promissory note (2) for the purchase of an identified condominium (3) at an agreed price. This is not a case where the subject of the note (*e.g.,* a guaranty for debts of companies controlled by the guarantor, as opposed to debts of an unrelated entity at a different bank) was misrepresented or altered.

In the present case, I conclude that *D'Oench* and section 1823(e) bar plaintiffs claims based on alleged misrepresentations concerning the term of the note, whether plaintiff characterize the misrepresentations as fraudulent inducement or fraud in the factum. Given plaintiffs' admission that they engaged in a course of negotiation concerning the note and understood that they were

signing a promissory note for the purchase of an identified property at a specified price, I conclude that the alleged misrepresentation "did not go to the very character of the proposed loan agreement, but only to its underlying terms."

*604 Columbus*, 968 F.2d at 1347. *See also Alten v. T.A.E.I., Inc.* [1993 WL 53566], 1993 U.S.Dist. LEXIS 2639 (E.D.Pa. March 2, 1993) (summary judgment based on *D'Oench* against claim that debtor signed demand note under impression that it was a ten or fifteen year note; "Plaintiffs demonstrate no evidence that they were unaware that they were signing a promissory note. Nor have they alleged that they were denied an opportunity to examine such documents. Actually, Plaintiffs admit to knowingly signing the promissory notes to finance their Triad investments.").

### C.

In their statement of facts giving rise to a genuine issue for trial, plaintiffs contend that the signature on a note executed by plaintiff Solomon is a forgery. Plaintiffs do not, however, make any specific argument that the alleged forgery raises a disputed factual issue concerning enforceability of the note. In response, FDIC contends that, if true, plaintiff Solomon ratified the (allegedly forged) signature. Plaintiff Solomon has not responded. Having examined the materials and found that FDIC's argument has merit, I conclude that plaintiffs have presented no fact issue that requires resolution concerning the alleged forgery.

### IV.

For the following reasons, I deny plaintiffs' motion for additional discovery.

First, in their motion, filed March 8, 1993, plaintiffs request 60 days for further discovery. This time period has passed. Plaintiffs concede that they have not attempted to conduct any further discovery.

Second, plaintiffs make no attempt to explain what further evidence they might obtain by their proposed discovery that would bear on the issue of applicability of *D'Oench* and section 1823(e). Rule 56(f) is not a free pass to avoid a ruling on the merits. Under Rule 56(f),

the movant must (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue, and (2) demonstrate good cause for failure to have conducted the discovery earlier.

*Mattoon v. Pittsfield*, 980 F.2d 1, 7 (1st Cir.1992) (internal quotation marks and case citations omitted). The record provides no basis for a contention that plaintiffs are not already aware of what misrepresentations were made to them concerning the nature of the notes they were signing, as well as any source of "fear" for their defense of duress. At the conference, plaintiffs could articulate no basis for contending that the requested discovery would uncover any fact issue not already proposed by plaintiffs (as opposed to further evidence supporting plaintiffs' allegations of fraud). For the reasons explained above, I conclude that plaintiffs' claims are barred by *D'Oench* and section 1823(e) even if the fact issues plaintiffs propose are resolved in plaintiffs' favor. Accordingly, I also conclude that plaintiffs have not demonstrated a basis for determining that further discovery could raise a trialworthy issue with respect to claims against FDIC. Plaintiffs' motion for further discovery is denied.

### ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) FDIC's motion for summary judgment (Docket No. 4, filed December 22, 1992) is ALLOWED.

(2) Plaintiffs' motion for additional discovery (Docket No. 9, filed March 8, 1993) is DENIED.

(3) A conference has been scheduled for September 7, 1993 at 12:30 p.m., in Courtroom 11, Third Floor, United States Courthouse and Post Office Building, Post Office Square, Boston, MA 02109, to discuss further proceedings in this case.