Quinlan, Regina L., J.
This is an action by plaintiff Citizens Bank of Massachusetts (“Citizens”) against *508 defendants Business Products Online, Inc. (“Business Products"), Matthew J. Hanley (“Matthew”), and Nathan J. Hanley (“Nathan”).[2] Citizens brought this suit in order to recover all amounts due and owing under notes and guarantees executed by the defendants in favor of the plaintiff. Pursuant to Mass.RCiv.P. 56, the plaintiff now moves for summary judgment on its claim of breach of the promissory note (Count I). The plaintiff also moves for summary judgment on all counterclaims asserted against it by the defendants. For the reasons set forth below, the plaintiffs motion for summary judgment is ALLOWED.

BACKGROUND

Matthew Hanley and his brother, Nathan Hanley, formed Business Products, an office supply company, in 1996. In order to support this venture, Matthew and Nathan Hanley secured a $50,000 line of credit from US Trust. Over the next few years, the line of credit was increased incrementally. By November of 1998, the line of credit had reached $230,000.
On August 4, 1999, Business Products executed and delivered to US Trust a line of credit commercial promissory note and allonge (collectively, “line of credit note”) in the amount of $230,000. At the same time, Business Products executed and delivered to US Trust a term note in the amount of $150,000 for a U.S. Small Business Administration 5-year term loan (“term loan”). The line of credit note as well as the term loan was secured by a security interest in Business Product’s business assets, the personal guarantees of Matthew and Nathan Hanley, and a mortgage on real property located at 52 Ridge Street, Arlington, MA. In order to perfect the security interests, Business Products executed, and US Trust filed, a UCC-1 financing statement for both the existing line of credit note and the term loan.[3]
In March 2000, Business Products’ line of credit was frozen, allegedly without any notice or explanation. Despite attempts by Business Products to rectify the situation, the line of credit remained frozen for several months.[4] According to Business Products, the company continued to make all required payments on the term loan as well as the existing line of credit.
In September 2001, Citizens cross-defaulted Business Products on all of its outstanding loan obligations and demanded payment. The basis for Citizens’ demand was that Business Products had failed to pay the existing line of credit down to a zero dollar balance for one month out of every twelve. However, the defendants allege that Citizens’ Vice-President, Frank L. Davis, III, stated that the “30 day cleanup” provision would not be strictly enforced.[5] At the time of the demand, Business Products did not have the available funds necessary to satisfy the request for full and immediate payment. As a result, on December 5,2001, Citizens recovered approximately $7,300 from Business Products’ checking account. On December 7, 2001, an additional $9,000 was withdrawn from Business Products’ account as well as approximately $8,800 from Matthew Hanley’s personal accounts. Shortly thereafter, the defendants signed a forbearance agreement with Citizens. Business Products was represented by counsel during the negotiation, drafting, and execution of the forbearance agreement.
As a result of the forbearance agreement and in accordance with the terms set forth therein, the property located at 52 Ridge Street in Arlington was sold and the proceeds were applied to the outstanding balance on the line of credit. However, the proceeds from the sale were insufficient to fulfill the line of credit obligation. As a result, the remaining outstanding balance of $21,812.02 was withdrawn from Business Products’ checking account in March 2002.
From December 2001 until January 2003, Business Products continued to make the requisite payments on the term loan. According to the terms of the forbearance agreement, however, the payments were to increase by $750 per month. Citizens did not immediately increase the automatic withdrawal and the term loan continued to be paid according to the original terms. In January 2003, Citizens notified Business Products that it was increasing the monthly payment on the term loan in accordance with the forbearance agreement. At the time of notification, Business Products could not afford such an increase and sought to refinance the term loan. However, an agreement could not be reached with Citizens and, in May 2003, Citizens made demand on Business Products for the then-outstanding amount of the term loan. On July 7, 2003, Citizens filed this suit seeking $48,290.97 plus attorneys fees and costs.

DISCUSSION Standard of Review

To prevail on summary judgment the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “. . . demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).

Liability on Demand Promissory Notes and Guarantees

In its complaint, Citizens alleges that Business Products, Matthew Hanley, and Nathan Hanley are in *509 default under the terms and provisions of the note and guarantees. The default arose as a result of failure to make required payments. Under the Uniform Commercial Code, G.L.c. 106, §3-308(b), plaintiff establishes a prima facie case by producing the instrument at issue and proving the validity of the signatures. Loew v. Minasian, 361 Mass. 390, 390 (1972). The burden then falls upon the defendants to prove any defense by a preponderance of the evidence. Coupanas v. Madden, 401 Mass. 125, 129 (1987). In this case, the defendants admit the existence and signatures on the notes and guarantees at issue. Since the plaintiff sets forth a prima facie case for breach of the note and guarantee, the burden is on the defendants to articulate a defense to this claim.

Defense: Implied Covenant of Good Faith and Fair Dealing

As a defense, the defendants assert that Citizens breached the implied covenant of good faith and fair dealing. This implied covenant demands that neither party to a contract shall do anything that will seriously impinge upon the right of the other party to reap the benefits of that contract. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991). Implied in every contract, “... the covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.” Uno Restaurants v. Boston Kenmore Realty, 441 Mass. 376, 385 (2004).
In alleging breach of the implied covenant of good faith and fair dealing, the defendants claim that Citizens froze Business Products’ line of credit without warning, notice or explanation and therefore deprived Business Products of its contractual right to an active line of credit. This alleged wrongdoing prevented Business Products from refinancing its obligations elsewhere. However, the terms of the line of credit note indicate that the “. . . [b]ank may, at any time, and from time to time, terminate any further borrowing and/or reborrowing of principal under the Note, with or without notice to the Borrower, and whether or not any of the Events of Default exist under the Note.” (See Allonge to Commercial Promissory Note.) Therefore, assuming Citizens did indeed undertake the affirmative act of freezing the line of credit, that conduct was well within the terms of the loan documents.
Additionally, since the line of credit note of $230,000 was fully drawn between March 2000 and December 2001, the defendants had no right to draw any further funds during this time period.[6] In other words, upon reaching the maximum credit balance, Business Products no longer had a contractual right to an active line of credit. Therefore, freezing the line of credit without notice, warning or explanation would not violate any implied covenant of good faith and fair dealing as such conduct did not impinge upon the right of Business Products to reap the benefits of the contract. Uno Restaurants, 441 Mass. at 385.
The defendants also argue that Citizens demonstrated a lack of good faith and fair dealing when, after cross-defaulting all of Business Products’ obligations and demanding immediate payment, Citizens allegedly refused to negotiate alternative options. As noted above, good faith and fair dealing is implicit in every contract. However, that doctrine cannot be invoked to create rights and duties that are not provided for in the contract. Uno Restaurants, 441 Mass. at 385. No language can be found in the note that requires Citizens to further negotiate the manner in which a debtor’s obligation is to be satisfied upon default. As a result, the claim that Citizens demonstrated a lack of good faith and fair dealing with regards to such negotiations must fail.
The defendants further allege that Citizens acted unfairly and without good faith when it retrieved funds from the accounts of Matthew Hanley and Business Products. However, a review of the loan documents, specifically the commercial promissoiy note and the guaranty, reveals specific language that indicates the right of Citizens to apply deposits of the defendants against outstanding liabilities.[7] Therefore, Citizens was exercising its contractual right; such action does not amount to a violation of the implicit covenant of good faith and fair dealing.
The defendants allege that a pattern of unfair dealing and bad faith was further evidenced by the fact that Citizens decided to increase the term loan payments in January 2003. Again, a claim of unfair dealing and bad faith must impinge upon the other party’s right to enjoy the fruits of the agreement. By enforcing the forbearance agreement according to its terms, Citizens was acting within its negotiated, contractual rights. There is no evidence offered by the defendants that Citizens was frustrating the intent of either party by delaying the increase in loan payments until January 2003.

Defense: Fraudulent Inducement

The defendants claim that they were fraudulently induced into agreeing to the loan documents at issue. In their answer, the defendants allege that Citizens’ Vice-President, Frank L. Davis, III, stated that the “30 day cleanup" provision would not be strictly enforced.
Statements of present intention as to future conduct may provide the basis for a fraud action if the statements misrepresent the actual intention of the speaker and were detrimentally relied upon by the recipient. Starr v. Fordham, 420 Mass. 178, 187 (1995). In his deposition, Matthew Hanley indicated that he was informed by Mr. Davis that enforcement of the provision was a discretionary decision. He also noted that Mr. Davis gave no indication that the provision would be waived or that it would not be *510 enforced. Therefore, the defense of fraud is unpersuasive as it would be unreasonable to conclude that Mr. Davis misrepresented the intentions of Citizens or that the defendants detrimentally relied on these alleged statements. Additionally, there is no reasonable expectation that the defendants could prove this defense at trial.

Defense: Duress

As an additional defense to the claims of Citizens, the defendants claim that the forbearance agreement was signed under duress and is therefore not binding. A party may establish economic duress by demonstrating that it involuntarily accepted the terms of an opposing party, under circumstances in which there was no alternative, and the circumstances were the product of coercive acts by the other party. International Underwater Contractors, Inc. v. New England Tel. and Tel. Company, 8 Mass.App.Ct. 340, 342 (1979).
In essence, the party alleging duress must demonstrate that “he has been the victim of a wrongful or unlawful act or threat. . . which deprives [him] of his unfettered will.” International Underwater Contractors, Inc., 8 Mass.App.Ct. at 342. The result is that the threatened party is “compelled to make a disproportionate exchange of values.” Id., quoting from 13 Williston, Contracts §1617, at 704 (3d ed. 1970). Taking advantage of another’s financial difficulty does not amount to duress; the person alleging financial difficulty must allege that the difficulty is a result of the actions of the party accused of coercion. Id.
In this case, the defendants allege substantial wrongdoing on the part of Citizens. However, there is no reasonable expectation that the defendants will be able to prove such wrongdoing at trial. As a result, the defense of duress must fail. In their opposition to plaintiffs motion for summary judgment, the defendants claim that Citizens inexplicably froze the line of credit in March 2000 until December 2001. However, as noted above, Citizens was well within its contractual right to take such action. Additionally, the defendants note the lack of communication between Citizens and the defendants during that same time period. However, such conduct does not amount to wrongful, illegal, or immoral conduct. The defendants also note that Citizens did not accept the different proposals presented by Business Products in response to the September 2001 demand. Again, Citizens was under no obligation to accept these proposals. Citizens debited the accounts of Business Products and Matthew Hanley according to its contractual right of offset. The actions taken by Citizens do not amount to an unlawful or wrongful act. As a result, the defense of duress must necessarily fall.[8]
For the foregoing reasons, the plaintiffs motion for summaiy judgment with respect to Count I of its complaint is ALLOWED.

Counterclaims

In their answer to the complaint of Citizens, the defendants brought several counterclaims. Specifically, the defendants allege breach of contract (Counterclaim I), breach of the implied covenant of good faith and fair dealing (Counterclaim II), unfair and deceptive business practices (Counterclaim III), conversion (Counterclaim IV), tortious interference with advantageous business relations (Counterclaim V), business defamation (Counterclaim VI), and negligent infliction of emotional distress (Counterclaim VII). In response, Citizens brought a motion for summary judgment on all of the counterclaims.
The forbearance agreement entered into between Business Products and Citizens included language in which the “... Borrower/Guarantor represented] and warranted] that no counterclaim, right of set-off or defense of any kind exists or is outstanding with respect to such obligations, indebtedness and liabilities.” The first question to be determined is whether or not the above-referenced language applies to the counterclaims set forth in the defendants’ answer.
A review of the answer as well as the supporting affidavits and memorandums submitted by the defendants reveals that the counterclaims offered by Business Products arose from alleged misconduct that occurred prior to execution of the forbearance agreement. As a result, these counterclaims are necessarily precluded from consideration as they were effectively waived by the language included in the forbearance agreement. Waiver clauses such as the one included in the forbearance agreement at issue here are valid and therefore enforceable. See Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 435 and 443 (1992); Shawmut Bank, N.A. v. Wayman, 34 Mass.App.Ct. 20, 22-24 (1993).
Business Products alleges that the provision is “oppressive and unfair.” However, such a claim does not necessarily preclude enforcement. Contracts of adhesion are generally enforceable unless they are “unconscionable, offend public policy, or are shown to be unfair in the particular circumstances.” Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 253 (1992). In order to determine whether an agreement is unconscionable, oppressive or unfair, particular attention should be paid to whether the challenged provision could result in “. .. oppression and unfair surprise to the disadvantaged party and not [the] allocation of risk because of ‘superior bargaining power.’ ” Waters v. MIN Ltd., 412 Mass. 64, 68 (1992). Considering that Business Products was represented by counsel at the time the agreement was executed and Business Products’ counsel participated in drafting this agreement, any agreement that this contract resulted in oppression and unfair surprise is unpersuasive.

ORDER

For the foregoing reasons, it is ORDERED that the plaintiffs motion for summary judgment on Count I of *511 the Complaint is ALLOWED and the plaintiffs motion for summary judgment on defendants’ counterclaims is ALLOWED.

 Northern Bank and Trust Company is the trustee process defendant in this matter.

 On January 10, 2000, US Trust merged into Citizens Bank and, as a result, Citizens Bank became the successor holder of the various loan documents.

 In fact, the defendants allege that the freeze on the line of credit lasted for over 16 months.

 In his deposition, Matthew Hanley testified that Mr. Davis informed him that enforcement of the “30 day cleanup” provision was a discretionary decision. Matthew Hanley also noted that Mr. Davis gave no indication that the provision would be waived or that it would not be enforced.

 According to the Allonge to Commercial Promissory Note: ”... the Borrower may from time to time, at the sole discretion of the Bank in each instance, borrow and reborrow principal under the Note so long as the outstanding aggregate principal sum at any time does not exceed the amount of the Principal Sum. . .’’

 It should be noted that the signature of Matthew Hanley appears on the loan documents. According to the Commercial Promissory Note: “The Borrower and any Guarantor hereby grant to the Bank, any Affiliate, and/or any Participant a security interest in the Deposits to secure all obligations of the Borrower and any Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, to the Bank, any Affiliate and/or any Participant to charge the Deposits which the Borrower and any Guarantor may at any time maintain with the Bank, and Affiliate and/or any Participant for any payment due on account of the Liabilities and/or the Guaranty Obligations. The Borrower and any Guarantor agree that the rights to setoff against Deposits and upon an Event of Default and to charge Deposits granted herein by the Borrower and any Guarantor to the Bank, any Affiliate or any Participant (a) are irrespective of the source or contributor(s) of funds or other property which comprise the Deposits, whether or not the Deposits, Liabilities and/or Guaranty Obligations are (1) individual and/or joint of the Borrower and any Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, and/or (ii) in the name of or by the Borrower and any Guarantor, or any one or more persons or entities comprising the Borrower and any Guarantor, with another or others . . .”

 Even if this court were to find that the forbearance agreement had been executed under duress and was therefore not binding, the defendants would still be liable for the underlying obligations of the term loan.