THE SLATE COMPANY *vs.* JACOB J. BIKASH & others.[1]

Suffolk.   October 2, 1961. — November 14, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Sale,* Contract of sale, Sale of business.  *Contract,* Construction.  *Good Will.  Unlawful Interference.  Unfair Competition.*

A covenant in a contract of sale of a wholesale candy and tobacco business, that the sellers "will not directly or indirectly, as employee or employer or otherwise, engage in . . . [such a] business . . . in a capacity where they will personally solicit, directly or indirectly, retailers for the purpose of selling at wholesale candy and tobacco," was not separate and independent from a covenant immediately following in the same sentence that the sellers would not "do anything to the prejudicing of the good will" of the business, and the second covenant was intended to exclude the sellers from any activity not excluded by the first covenant which would interfere with existing customer relationships of the business.  [175]

---

[1] Mrs. Bikash, William P. Kaitz, and General Distributing Co. Inc., a corporation.

Slate Co. *v.* Bikash.

A conclusion by the trial judge in a suit in equity by the purchaser of a wholesale candy and tobacco business sold "as a going business, including the good will," that the sellers had not violated a covenant in the contract of sale not to "do anything to the prejudicing of the good will" of the business, was justified in the circumstances where it appeared that, although some four months after the sale the sellers without publicity had become comakers on a note to a bank for a loan intended to expand the operations of a corporation competing with the plaintiff and formed, wholly owned and managed by the sellers' son-in-law and had been assigned the accounts receivable of the corporation as security for their indebtedness, the sellers had not solicited any customer of their former business for their son-in-law or his corporation nor advised either him or it and had not engaged in the wholesale candy and tobacco business. [176]

BILL IN EQUITY, filed in the Superior Court on July 1, 1958. The suit was heard by *Nagle, J.*

*Walter Hartstone,* for the plaintiff.

*Melvin Thorner,* for the defendants Jacob J. Bikash and another.

*I. Jack Levy,* for the defendants General Distributing Co. Inc. and another.

CUTTER, J. This is a bill in equity by the Slate Company (Slate), the purchaser of a business formerly conducted in Quincy by Bikash and his wife, seeking injunctive and other relief against them and the other defendants. It is alleged that certain acts of the defendants constituted or brought about violation of a covenant not to compete found in a purchase and sale contract dated June 27, 1957. A judge in the Superior Court made comprehensive findings, concluded that neither Bikash nor his wife had committed any breach of the contract of sale, and ordered a decree to be entered dismissing the bill. At the arguments, counsel for Slate conceded that the trial judge's subsidiary findings were justified by the evidence which is reported. Slate appealed from the final decree. The facts set out below are based upon the trial judge's findings.

Slate is engaged in the wholesale candy and tobacco business in Quincy, selling to retail outlets in greater Boston and along the South Shore. Prior to August 1, 1957, Bikash and his wife conducted Service Tobacco Company

(Service), a wholesale candy, tobacco, and grocery business in Quincy "servicing approximately nine hundred . . . retail outlets in the same general area serviced by" Slate.

The defendant Kaitz, son-in-law of Bikash, was in the employ of Service from 1949 to 1954. In October, 1956, Kaitz, with financial assistance from Bikash and his wife, purchased a wholesale candy and tobacco business in Boston, known as Paul Solomon Company. He operated this business until October, 1957, when he caused the formation of the defendant, General Distributing Co. Inc. (General), which succeeded to the business of Paul Solomon Company. Kaitz owned all the stock of General and was its manager.

In the spring of 1957, one Flashman, general manager of Slate, negotiated with Bikash for the sale of Service to Slate. A written contract of sale was executed in June, 1957. On August 1, 1957, the sale to Slate of "Service as a going business, including the good will" was completed. The contract provided that Bikash and his wife "will not directly or indirectly, as employee or employer or otherwise, engage in the wholesale candy and tobacco business in . . . Massachusetts in a capacity where they will personally solicit, directly or indirectly, retailers for the purpose of selling at wholesale candy and tobacco for . . . three . . . years from . . . [August 1, 1957] nor do anything to the prejudicing of the good will."

In July, 1957, Kaitz offered employment to four employees of Service and told them that he intended to move to Quincy and to form a new company (General). Subsequently two employees of Service transferred briefly to the employ of Slate after the sale of Service and then accepted employment with General. One of these subsequently returned to work for Slate. Just before Service was sold, Kaitz learned of the sale. He, and later General, successfully solicited certain customers of Service. Although Bikash and his wife knew of this solicitation, "they did nothing to hinder or assist . . . General in obtaining such accounts."

In September, 1957, Kaitz moved General's offices to Quincy. In December, 1957, in order to expand General's

operations, General borrowed from a bank $20,000 on a note, the comakers of which were Kaitz, Bikash, Mrs. Bikash, and General. For security for the indebtedness to the bank, General assigned to Bikash its accounts receivable.

From the time Bikash and his wife first discussed the sale of Service to Slate, neither vendor solicited any former customer for either Kaitz or General. They did not engage in the wholesale candy and tobacco business in Massachusetts nor did they advise Kaitz or General.

1. Counsel for Slate correctly conceded that the judge's subsidiary findings were justified by the evidence. So far as the evidence was conflicting, it was oral. It has not been shown that any of the subsidiary findings of the judge were plainly wrong. See *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178; *Cowden* v. *Cutting,* 339 Mass. 164, 165; *Jertson* v. *Hartley,* 342 Mass. 597, 601.

2. Slate's principal contention is that Bikash and his wife, by their financial assistance to Kaitz, violated their covenant not to "do anything to the prejudicing of the good will." This covenant immediately follows the covenant that they would not "directly or indirectly . . . engage in the wholesale candy and tobacco business . . . in a capacity where they will personally solicit . . . retailers." The two covenants appear in the same sentence and they cannot be read as wholly separate and independent. Indeed, some help in interpreting the general covenant not to prejudice the good will may be gained by considering what was forbidden by the Bikashes' earlier, more precise covenant. See Williston, Contracts (3d ed.) § 619 at pp. 743–746; Corbin, Contracts, § 552. See also Restatement: Contracts, § 236 (c). The two covenants are so related as to suggest that the purpose of the more general covenant was merely to exclude the Bikashes from activity, other than direct solicitation of customers, which would interfere with existing customer relationships and which might be peculiarly effective because of the Bikashes' former relationship with Service's customers.

Good will is necessarily attached to a going business and relates to the "name, location and reputation, which tends

to enable" the business "to retain the patronage." See *Murray* v. *Bateman,* 315 Mass. 113, 115; *Lynn Tucker Sales, Inc.* v. *LeBlanc,* 323 Mass. 721, 724. The obligation of a vendor not to interfere with the good will of a business sold by him has been described as one to refrain from using "the opportunities and influences which had built . . . [the business] up to impair it." See *Munsey* v. *Butterfield,* 133 Mass. 492, 494–495; *Martino* v. *Pontone,* 270 Mass. 158, 160–161. See also *Rosenberg* v. *Adelson,* 234 Mass. 488, 490; Levin, Non-Competition Covenants in New England: Part I, 39 B. U. L. Rev. 482, 490 et seq., 514 et seq.

The Bikashes, in assisting their son-in-law, made no use of their experience with Service. At most they helped Kaitz, as comakers of his note representing a loan received, to finance his business then competing with Slate. No publicity appears to have been given to their liability upon the note. Their activity thus gave rise to no danger that old customers of Service would be attracted to General because of the Bikashes' liability on the note.

We are not faced with the question whether the acquisition by the Bikashes of a stock interest in General would have violated the covenant. See *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 475; Levin, Non-Competition Covenants in New England: Part II, 40 B. U. L. Rev. 210, 232–234. The Bikashes had no ownership interest in Slate's competitor. General was not the Bikashes operating in another form. Cf. *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, 420–425. We think that, in the circumstances, the trial judge justifiably concluded that the Bikashes' interest in General as comakers of its note (with an assignment of accounts receivable to secure them against loss) did not constitute a violation of the covenant.

The cases relied upon by Slate are distinguishable. In some of these cases, the action, held to be in violation of the covenant not to compete, involved greater direct interference with the customer good will of the business which had been sold. Cf., e.g., *S. F. Myers Co.* v. *Tuttle,* 183 Fed. 235, 236–238 (C. C. S. D. N. Y.); *C. H. Barrett Co.* v. *Ainsworth,*

156 Mich. 351, 355–356. Cf. also *Weickgenant* v. *Eccles,* 173 Mich. 695, 700; *Colton* v. *Duvall,* 254 Mich. 346, 349–350. In others, the covenant was interpreted more broadly than we are prepared to interpret that made by the Bikashes. Cf. *Perkins* v. *Lyman,* 9 Mass. 522, 529–530; *Davis* v. *Barney,* 2 Gill & Johnson, 382, 401–403 (Md.).

In view of the conclusion that the Bikashes did not violate their covenant, there is no basis for equitable relief against the other defendants on the theory that they induced a violation by the Bikashes.

*Decree affirmed with costs of the appeal.*