NATALIE JEAN AVALLONE *vs.* ELIZABETH ARDEN SALES
CORPORATION.

Suffolk.     May 10, 1962. — June 12, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Contract,* Of employment, Validity, Covenant against competition. *Duress. Equity Jurisdiction,* Specific performance, Covenant against competition.

In a suit in equity by a former manager of a department of the defendant's beauty salon to determine the validity of an employment contract between the parties containing a covenant against competition, where it appeared from a master's report that officers of the defendant at a conference preceding execution of the contract asked the plaintiff whether she intended to leave the defendant's employment and open a competing business, which she denied although she was then a stockholder and officer of a new corporation formed to operate a competing business, evidence summarized by the master including testimony by her that at the conference she "was confused and upset and couldn't think clearly" and showing that the defendant's officers observed her there, but not showing that her confusion was expressed outwardly or visibly, did not justify a finding by the master that the officers of the defendant "were aware of . . . [her] condition." [560–561]

In a suit in equity to determine the validity of an employment contract between the parties executed at a conference of the plaintiff with officers of the defendant, a conclusion by a master, that the circumstances of the conference "produced an effect on the plaintiff that overcame her free will . . . with the result that . . . [she] executed the employment contract," which she would not have done "under normal circumstances," could not stand and was properly struck from the master's report where any inference that such condition of the plaintiff at the conference was due to conduct for which the defendant was responsible, rather than to her own conduct, was negatived by an express finding by the master that the defendant's officers "did not exercise any active fraud, duress or deception upon the plaintiff to compel or persuade her to sign" the contract.   [560–561]

A covenant by the manager of a department of a beauty salon in a city, not to compete with the proprietor of the salon within a radius of six city blocks from the salon for a period of two years following termination of the manager's employment by the proprietor, was reasonably limited in space and time.   [561–562]

BILL IN EQUITY filed in the Superior Court on July 21, 1961.

The suit was heard by *Tauro*, J., on a master's report.

*G. Bruce Stuart* for the plaintiff.

*John M. Harrington, Jr.* (*Edward A. Benjamin* with him) for the defendant.

SPIEGEL, J.   The plaintiff brings this bill in equity under G. L. c. 231A, to determine the status and validity of an employment contract.   The defendant filed a counterclaim seeking certain injunctive relief against the plaintiff.   The case was referred to a master.   The defendant filed objections to portions of the master's report (which under Rule 90 of the Superior Court [1954] are treated as exceptions) and requested that the master append a summary of evidence upon which one of the findings objected to was based. Thereupon the master filed a summary as requested.   A motion by the plaintiff to confirm the master's report as filed was denied.

An interlocutory decree was entered sustaining the defendant's exceptions, striking certain findings from the master's report, and confirming the master's report as modified.   A final decree was entered in which it was ordered, adjudged, and decreed that: "1.   The . . . [plaintiff] and

the . . . [defendant] entered into a binding contract, duly
executed and delivered on July 12, 1961 . . . . 2. The ob-
ligations and covenants of the . . . [plaintiff] contained in
. . . [certain paragraphs] of said contract are now in full
force and effect. 3. The . . . [plaintiff] be and hereby is
enjoined until and including July 14, 1963, from, directly or
indirectly, for herself or as an agent of, or on behalf of, or
in conjunction with, any person, firm, association or corpo-
ration, engaging in the business of selling goods or render-
ing services in competition with those sold or rendered by
the . . . [defendant] within a radius of six city blocks of
the . . . [defendant's] salon at 20–24 Newbury Street, in
the City of Boston, Commonwealth of Massachusetts.''

The plaintiff appeals from the interlocutory and final
decrees.

The pertinent facts as found by the master are herewith
summarized. In 1956 the plaintiff was employed as mana-
ger of the ''hair and hair-styling department'' of the de-
fendant's beauty salon in Boston. In the spring of 1961,
while still thus employed, she, together with certain other
persons, ''decided to go into the business of operating a
beauty salon in . . . Boston. Pursuant to said plan, the
plaintiff and her associates'' on May 26, 1961, formed
a Massachusetts corporation, Shelagh Patrizi, Inc. The
plaintiff was elected a vice-president and director. The
''plaintiff and one of her associates, Shelagh Nunn-Pattrick,
owned at least forty (40%) percent of the issued and out-
standing stock of the corporation.'' On June 30, 1961, the
corporation entered into a lease for the rental of the entire
second floor in a building, 18 Newbury Street, Boston, im-
mediately adjacent to the premises occupied by the defend-
ant. The corporation entered into contracts totaling ap-
proximately $45,000 for the renovation of, and purchase of,
equipment for the operation of a beauty salon to open by
September, 1961, in its newly leased premises. The plain-
tiff intended to remain in the defendant's employ until
the newly formed corporation was ''ready to commence
business.''

From October, 1956, until July 11, 1961, the plaintiff and the defendant had no written contract of employment and the "plaintiff had not executed any covenants restricting her right to compete with the defendant upon the termination of her employment."

Immediately prior to July 12, 1961, the defendant learned that the plaintiff planned to open a beauty salon on Newbury Street. On July 12, 1961, an employee of the defendant telephoned the plaintiff and requested her "to come to New York City [the executive offices of the defendant] on that day ostensibly for the purpose of discussing new hair dyes." The defendant's "real purpose for summoning the plaintiff to New York was to determine whether the plaintiff was going to leave the defendant's employment" and open a competing beauty salon.

Late in the afternoon of July 12, 1961, the plaintiff had a conference in the New York office of the defendant with one Elizabeth Graham and one Carl W. Gardiner, executive officers of the defendant. The plaintiff was asked whether she intended to leave the defendant's employment and open a beauty salon with Shelagh Nunn-Pattrick. The plaintiff denied any such intentions and did not disclose her association or interest in the newly formed corporation. She was asked if she would sign an employment contract with the defendant and the plaintiff agreed to do so. In reviewing the terms of the proposed contract, the plaintiff was informed that there would be a restrictive covenant. Gardiner prepared a written employment contract, which was typed in triplicate.[1] She was handed the original and the two copies of the contract and requested to sign them. She did so and retained one of the copies. Although she had an opportunity to read the contract, she did not do so.

---

[1] The restrictive covenant is contained in paragraph 8 of the contract and provides as follows: "The employee further expressly agrees that for a period of two (2) years following the termination of this contract (however same may occur) she will not, directly or indirectly, for herself or as an agent of, or on behalf of, or in conjunction with, any person, firm, association or corporation, engage in the business of selling goods or rendering services in competition with those sold or rendered by the employer within a radius of six city blocks from any salon or salons where she has been employed by the employer."

The "defendant's executive officers did not exercise any active fraud, duress or deception upon the plaintiff to compel or persuade her to sign the employment agreement."

After signing the contract the plaintiff returned to Boston and on July 13, 1961, consulted her attorney. As a result of that conference the plaintiff's attorney on July 13, 1961, sent a letter to the defendant stating that "it would be impossible for the plaintiff to enter into such a contract containing a restrictive covenant." The plaintiff performed her duties at the Boston salon of the defendant on July 13 and 14 and then "resigned her position with the defendant."

The plaintiff contends that the judge erred in sustaining the defendant's exceptions and striking from the master's report the words "and that the defendant's officers were aware of the plaintiff's condition" from finding numbered 31,[2] and striking all of findings numbered 34 and 35.[3]

There was no error in striking the words quoted above from finding numbered 31. A summary of the evidence having been obtained in accordance with the requirements of Rule 90 of the Superior Court, the question of sufficiency of the evidence was properly before the judge. *Morin* v. *Clark,* 296 Mass. 479, 482–483. *Carilli* v. *Hersey,* 299 Mass. 139, 143.

The summary furnished by the master recites that two officers of the defendant corporation questioned the plaintiff concerning the possibility of her opening a competing

---

[2] Finding numbered 31 is as follows: "31. I find that while at said conference and at the time of the execution of said employment agreement on July 12, 1961, the plaintiff was nervous, frightened and confused and that the defendant's officers were aware of the plaintiff's condition."

[3] Findings numbered 34 and 35 are as follows: "34. Drawing all permissible inferences from the facts found by me, I find that the totality of (1) being ordered to come to New York on July 12, 1961; (2) being questioned by the defendant's executive officers concerning the possibility of her entering into a competing business and (3) the plaintiff's fear that the defendant's officers would discover that she was going to enter into a competing business produced an effect on the plaintiff that overcame her free will and normal thinking processes with the result that the plaintiff executed the employment contract containing the restrictive covenant. 35. I find that under normal circumstances, the plaintiff would not have executed such a contract in view of the prior commitments made by her concerning the opening of a new beauty salon."

business; that the "plaintiff testified that she was confused and upset and couldn't think clearly"; and that the defendant's officers observed the plaintiff during the conference. This evidence does not justify an inference that the defendant's officers had knowledge of her condition. The summary is devoid of facts which show an outward or visible expression of her alleged confusion. There was no error in striking that part of finding numbered 31 objected to by the defendant.

There was no error in striking findings numbered 34 and 35. The substance of these findings was that the circumstances of the plaintiff being called to New York and questioned about starting a competing business and her fear that the defendant's officers would discover that she did intend to open a competing business "produced an effect on the plaintiff that overcame her free will and normal thinking processes," and "under normal circumstances," the plaintiff would not have executed the contract.

Conduct by one party which causes another to enter into a contract "under the influence of such fear as precludes him from exercising free will and judgment" constitutes a basis for avoiding the contract. Restatement: Contracts, §§ 492, 495. Williston, Contracts (Rev. ed.) § 1603. See *Carey* v. *Fitzpatrick,* 301 Mass. 525, 529. The master's express finding that the defendant's officers exercised no "active fraud, duress or deception upon the plaintiff" negatives any inference that conduct for which the defendant was responsible induced the plaintiff's fear. On the contrary, it is clear that the plaintiff's own conduct was responsible for her "nervous, frightened and confused" condition.

The master's conclusion that the plaintiff was not in the exercise of her free will at the time of the execution of the contract was, therefore, without legal significance.

With respect to the validity of the covenant not to compete, "[i]t has been long settled in this Commonwealth that a covenant inserted in a contract for personal service restricting trade or competition or freedom of employment is not invalid and may be enforced in equity provided it is

necessary for the protection of the employer, is reasonably limited in time and space, and is consonant with the public interest.   What is reasonable depends on the facts in each case." *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714, 716, and cases cited.[4]

We are of opinion that, in the circumstances of this case, a covenant not to engage in a competing business limited to a period of two years after the termination of the contract and to an area of six city blocks is not unreasonable.

*Interlocutory and final decrees affirmed.*

---

[4] Such a covenant is also enforceable under the law of New York, the place of making of the contract.   *McCall Co.* v. *Wright,* 198 N. Y. 143.   *Foster* v. *White,* 248 App. Div. (N. Y.) 451; affd. 273 N. Y. 596.

