Fabricant, J.
The Court has considered the arguments of counsel presented in their memoranda and at the hearing on the present motion, and has thoroughly reviewed the entire record submitted, including supplemental materials submitted by both sides after the hearing. Based on that consideration and review, the Court concludes as follows.
BACKGROUND
Aldo’s suit seeks to enforce a change of control agreement between himself and Vivid that he agreed, in writing, to terminate by substituting a retention agreement between himself and Vivid’s acquirer, EG&G. The issues presented are three: (1) whether Aldo is entitled to rescind the retention agreement on *699 the ground of duress; if not, (2) whether that agreement is effective to terminate the change of control agreement, absent signature by Vivid; and (3) whether, under the terms of the retention agreement, it took effect so as to preclude his claim.
Although the facts initially appear complicated, they essentially come down to these.[1] At the time he entered into the retention agreement, Aldo knew that EG&G proposed to acquire Vivid, but was unwilling to do so unless he would release his rights under the change of control agreement.[2] Aldo also knew that the proposed acquisition was Vivid’s best hope for financial viability, and thus was in his personal financial interest, as well as that of Vivid and its other employees; indeed, Aldo knew that if the acquisition did not proceed, Vivid’s financial situation would likely necessitate layoffs of employees with whom he had direct personal relationships. Aldo also knew that the change of control agreement was of little value to him in the absence of a merger or acquisition transaction, since under the terms of that agreement his most significant rights would be triggered only by consummation of such a transaction.
In this context, EG&G offered Aldo the retention agreement. EG&G made veiy clear to Aldo that the proposal was to substitute the retention agreement for his change of control agreement; his acceptance of the former would necessarily terminate the latter, and release all his rights thereunder. Despite the circumstances, and the urging of his colleagues at Vivid, Aldo did not accept the terms initially proposed; rather, he successfully negotiated for more favorable terms. When presented with the second version while traveling on business on September 30, 1999, and told his response was required that day, Aldo still did not immediately acquiesce; he agreed only after a series of telephone consultations with his own personal attorney as well as with Vivid personnel and Vivid’s outside counsel.
Aldo’s claim of duress apparently centers on a statement of Vivid’s outside counsel, Phillip Flink, in the course of one of these conversations. As described in Aldo’s deposition, the statement addressed the “hypothetical scenario” that Aldo’s rejection of the proposal would result in EG&G’s rejection of the acquisition. In that event, in light of Aldo’s (apparently adverse) relationship with Vivid’s president, Flink said “something to the effect that you will be fired or you will likely be fired.” This statement, along with the timing and the surrounding circumstances, according to Aldo’s deposition testimony, caused him to feel “totally pressured to sign the letter.”
The retention agreement, as executed by Aldo and EG&G, stated its effect as follows:
This agreement supersedes any agreement that you may have had with Vivid, including, without limitation, the agreement between you and Vivid dated June 4, 1999 and you agree to release Vivid from any obligation it may have to you under any such agreement. This agreement shall take effect immediately prior to the Acquisition, but if the Acquisition does not take place this agreement shall have no effect.
Vivid did not sign the retention agreement, despite the provision in paragraph 12 of the change of control agreement that “(t]his Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.”
Within days of Aldo’s agreement, and in reliance on it, EG&G agreed to proceed with the acquisition. The transaction closed in January of 2000. In November of 1999, before the closing but after EG&G had contractually bound itself to proceed, Aldo resigned from Vivid and asserted his claim to severance under the change of control agreement.
DISCUSSION
The facts presented, considered in the light most favorable to Aldo, do not amount to duress. A party seeking rescission based on duress must demonstrate that the other’s conduct “caused him to enter into the contract ‘under the influence of such fear as precludes him from exercising free will and judgment.’ ” Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 22 (1983), quoting Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). Moreover, not every fear having that effect will suffice; the fear involved must arise from “pressures applied unlawfully or wrongfully . . . Merely taking advantage of another’s financial difficulty is not duress. Rather the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion . . . The assertion of duress must be proved by evidence that the duress resulted from the defendant’s wrongful and oppressive conduct and not by plaintiffs necessities.” International Underwater Contractors, Inc., 8 MassApp.Ct. 340, 342 (1979). Neither threats to take actions that are not wrongful or unlawful, nor such actions themselves, constitute duress such as to support rescission. Id. at 346.
The facts presented, considered in the light most favorable to Aldo, establish none of the elements of duress. That Aldo exercised his free will and judgment is apparent in his negotiation of terms more favorable than those originally proposed, as well as his consultation with his own counsel. No doubt Aldo felt pressure, but nothing in the evidence offered indicates that such pressure arose from any actual or threatened wrongful or unlawful conduct on the part of either Vivid or EG&G. As of September 30, 1999, neither EG&G’s rejection of the acquisition, nor Vivid’s discharge of Aldo, would have violated any rights or obligations; EG&G had not yet made any contractual commitment to the transaction, and Aldo was an employee at will.[3] Nor do the facts indicate that Aldo made a “disproportionate exchange of values.” Inter *700 national Underwater Contractors, Inc., 8 MassApp.Ct. at 342. To the contrary, the record indicates that he obtained a guarantee of lucrative employment, with generous severance benefits, in return for waiving rights that would be triggered only upon the occurrence of events of which there was then no likely prospect.
Aldo’s theory under paragraph 12 of the change of control agreement is similarly untenable. The undisputed facts leave no room for doubt that all three parties affectedAldo, Vivid, and EG&Gacted in anticipation of EG&G becoming Vivid’s successor in interest, as in fact it did, and with the understanding that Vivid, once acquired by EG&G, would have the benefit of Aldo’s release of his rights under the change of control agreement, in return for which EG&G would provide Aldo with the employment and severance benefits set forth in the retention agreement. The issue can be analyzed under any of, several alternative theories: that Aldo and Vivid orally agreed to modify the cited requirement of paragraph 12, see Cambridgeport Savings Bank v. Boergner, 413 Mass. 432, 439 (1992); that Vivid was a third-party beneficiary of the retention agreement, see Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982); or that Aldo is estopped from repudiating his express agreement, on which EG&G relied in agreeing to the acquisition, see Cataldo Ambulance Service, Inc., v. City of Chelsea, 426 Mass. 383, 386 and n.6 (1998). Whatever analysis is employed, the outcome is the same: Aldo is bound by his release, regardless of the identity of the signatory to the instrument.
Finally, Aldo seizes on the provision in the retention agreement that “(t]his agreement shall take effect immediately prior to the Acquisition.” From this he reasons that his release was not in effect at the time he resigned, so that as of that time he retained his right to the benefits promised him in the change of control agreement.
Even if the proposed interpretation were supported by the language and circumstances of the retention agreement, it would not save Aldo’s claim. There can be no dispute that the retention agreement, including its release provision, became fully effective upon the closing. Once the agreement took effect, so did Aldo’s release of any claim under the change of control agreement. Thus, even if a cause of action had arisen upon Vivid’s refusal to pay benefits under the change of control agreement, based on Aldo’s resignation in anticipation of the acquisition, but before it occurred, that cause of action was thereafter extinguished by Aldo’s release, and he retains no right to assert it now.
More fundamentally, Aldo’s proposed interpretation is unsupportable. Interpretation of an unambiguous agreement is an issue of law for the Court, properly decided on summary judgment, not an issue of fact for trial. See Lubermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 465 (1995); Affiliated FM Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 842 (1994); Cody v. Connecticut Gen. Lfe Ins. Co., 387 Mass. 142, 146 (1982); Bardon Trimount, Inc. v. Guyott, 49 Mass.App.Ct. 764, 771 (2000). A contract term is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). Even in the case of an ambiguous agreement, interpretation is a matter of law except insofar as it may turn on facts in genuine dispute. See Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999); USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). Absent a proffer of disputed evidence bearing on interpretation, the issue must necessarily be decided as a matter of law, despite any ambiguity in the contract language. See US Trust v. Henley & Warren Management, Inc., 40 Mass.App.Ct. 337, 343 (1996). In construing any instrument, the Court must give effect to the intentions of the parties, as expressed in the language employed, considered in light of the context of the transaction and the purposes to be accomplished. See Starr v. Fordham, 420 Mass. 178, 190 (1995); Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981). "So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument ...” City of Haverhill v. George Brox, Inc.. 47 Mass.App.Ct. 717, 720 (1999), quoting Bray v. Hickman, 263 Mass. 409, 412 (1928).
Here, the intentions of the parties are clear and undisputed: both sides intended that if the acquisition proceeded, as in fact it did, Aldo’s rights would be those set forth in the retention agreement, not those provided in the change of control agreement. The language of the document must be read in such a manner as to effectuate that intent. Nor does such a reading require any departure from the language employed. In context, the provision Aldo cites is readily understood as identifying the effective date of the rights provided him under the agreement to employment with EG&G, or to severance benefits in case of termination. That language has no sensible application to his release of rights under the change of control agreement. All of the surrounding circumstances of the transaction compel the conclusion that the parties intended that aspect of the agreement to take effect immediately, subject to the condition that the acquisition proceed to closing. See City of Haverhill v. Brox, 47 Mass. at 719-24.
The undisputed facts establish that Aldo has released his rights under the change of control agreement that is the basis for all of the claims he asserts in this action. Accordingly, the defendant is entitled to judgment as a matter of law on all counts of the complaint.
*701 CONCLUSION
For the reasons stated, the Motion of Vivid Technologies, Inc., for Summary Judgment is ALLOWED.

 By failing to controvert any of the facts set forth in the defendant’s statement pursuant to Superior Court Rule 9A(b)(5) in the manner provided by that rule, the plaintiff has admitted each of those facts. For purposes of this motion, the Court also treats as undisputed, and considers in the light most favorable to the plaintiff, the additional factual assertions set forth by the plaintiff in his response to that statement, to the extent that those assertions are supported by references to evidentiary materials submitted.

 Deposition testimony of Vivid’s president, David Ellenbogen, that he was less than fully convinced of EG&G’s unwillingness in this regard, is of no particular significance, in light of the unequivocal testimony of EG&G’s own representative.

 The evidence provides no support for Aldo’s assertion at argument that Vivid threatened to repudiate its obligations under the change of control agreement. If Aldo’s refusal had caused EG&G to reject the acquisition deal, those obligations would not be triggered, and Vivid would have no occasion to take any action with respect to them.