Fabricant, J.
INTRODUCTION
This is an action on two notes, executed by the defendant as a means of providing for payment of outstanding arrearage under two service contracts. Presently before the Court is the plaintiffs motion for summary judgment on both counts of the complaint and both counts of the defendant’s counterclaim for breach of the service contracts. After hearing, and review of all materials submitted, including affidavits submitted by both sides at the time of the hearing, the Court concludes that the motion must be allowed.
BACKGROUND
The record before the Court provides the following factual background. On March 9, 1999 the parties entered into an agreement, referred to as the “First Service Agreement,” under which plaintiff Gannett Telemarketing, Inc. (“GTI”) would perform certain services for defendant Integral Resources, Inc. (“IRI”), for which IRI would pay GTI. The agreement provided, in paragraph 9, that “GTI will endeavor to produce telemarketing results to achieve [IRI’s] expectations. [IRI] acknowledges the inherent lack of certainly regarding telemarketing results since such results are dependent upon a number of factors outside of GTI’s control. .. GTI shall not be liable for damages, direct, indirect, consequential or otherwise, including any liability for lost profits, resulting from delays in performance or errors, beyond the fee charged for the services performed hereunder.”
Some two years later, on or about July 30, 2001, IRI executed and delivered a promissoiy note to GTI in the amount of $692,190.70. The note recites that “IRI has incurred accounts payable in the amount of $692,190.70 to GTI, and IRI and GTI have agreed that IRI will pay such amount to GTI pursuant to the terms of this Note. Upon execution and delivery of this Note, such accounts payable and the obligation represented thereby shall no longer be deemed outstanding and shall be payable pursuant to the terms of this Note.” The note provides for payment by specified installments beginning September 1, 2002. On the same date the parties executed a securiiy agreement granting GTI a security interest in property of IRI, to secure the indebtedness reflected in the note.
On the same date, the parties also executed an agreement referred to as the “Second Service Agreement.” This document recites, in its first paragraph, that, “The Telemarketing Service Agreement entered into between IRI and other entities and GTI on March 9, 1999 is hereby terminated without liability, except with regard to any outstanding payment obligations of *341 IRI and such entitles to GTI for services provided up to the Effective Date.” This second agreement goes on to provide for further services to be provided by GTI, with payment to be made by IRI. Paragraph 9 of the second agreement contains language similar to that in the first, as follows: “GTI will use commercially reasonable efforts to produce telemarketing results to achieve IRI’s reasonable expectations however IRI acknowledges the inherent lack of certainty regarding telemarketing results since such results are dependent upon a number of factors outside of GTI’s control ... GTI SHALL NOT BE LIABLE FOR INDIRECT OR CONSEQUENTIAL DAMAGES OR ANY LIABILITY FOR INDIRECT OR CONSEQUENTIAL DAMAGES OR ANY LIABILITY FOR LOST PROFITS RESULTING FROM DELAYS, ERRORS OR SUBSTANDARD PERFORMANCE BY GTI.” (Upper case in original.)
Soon thereafter, conflict arose, leading to an exchange of correspondence between attorneys for the parties. In a letter dated April 24, 2002, counsel for IRI denied that IRI had failed to respond to communications, and asserted that IRI had “generated a proposal for resolving the alleged outstanding balance.” The letter went on to assert that “this matter dates back to August 2001, at which time my client advised yours that your client was ‘out of contract,’ and had performed ‘substandard work.’... Insufficient corrective efforts were made by GTI, and GTI remained out of contract through the date of termination... In light of these circumstances, IRI considered their option of offsetting the alleged outstanding balances against GTI’s breach of the Service Agreement, but instead attempted to resolve the mater through a deferral of, and payment plan for, the alleged outstanding balances.”
Soon after that letter, the parties did resolve the matter along those lines. On May 15, 2002, IRI executed and delivered a second promissory note to GTI, this time in the amount of $188,118.03, providing for payment in specified installments beginning August 15, 2002. The note was again accompanied by a security agreement. The second note recites that “IRI has incurred accounts payable in the amount of $188,118.03 to GTI pursuant to the Telemarketing sales agreement, and IRI and GTI have agreed that IRI will pay such amount to GTI pursuant to the terms of this note. Upon execution and delivery of this Note, such accounts payable and the obligation represented thereby shall no longer be deemed outstanding and shall be payable pursuant to the terms of this Note. The obligation of IRI to pay hereunder shall be absolute and unconditional and shall not be subject to any defense, setoff, counterclaim, or recoupment which may arise out of, under or in connection with such Telemarketing Sales Agreement or by reason of any indebtedness or liability any time owing by GTI or IRI.”
IRI did not make the payments specified under the two notes. GTI brought this action on December 16, 2002 seeking judgment for the amounts of the two notes. IRI responded, on January 6, 2003, with an answer and two-count counterclaim. Count I of the counterclaim alleges that GTI breached the First Services Agreement by failing to properly perform the services, causing IRI lost revenues and unnecessary expenses. Count I further alleges that “IRI is entitled to recoup the damages for which Gannett is liable . . . by retaining any and all amounts for which IRI may be indebted to Gannett,” and that “IRI is entitled to setoff the damages for which Gannett is liable ... by retaining any and all amounts for which IRI may be indebted to Gannett.” Count II of the counterclaim alleges that GTI breached the Second Services Agreement by failing to perform the services properly, causing IRI lost revenues and unnecessary expenses; count II similarly asserts a right to recoupment and setoff “by retaining any and all amounts for which IRI may be indebted to Gannett.”
In support of these allegations of its counterclaim, IRI offers the amended affidavit of its chairman. The affidavit asserts, on information and belief, that GTI failed properly to supervise, train, and educate its staff in the manner necessary, and that these failures caused “erosion of the Pledgor base for IRI clients and lost revenues and profits for IRI” as well as unneces-saiy expenses. The affiant asserts the expectation that discovery not yet conducted will supply evidence of the alleged failures.
The affiant goes on to assert that “(i]f IRI had been aware at the time that it executed and delivered the Notes to Gannett that Gannett had materially failed to fully and properly perform its obligations... IRI would not have executed and delivered the Notes to Gannett because Gannett did not provide value in exchange for the Notes.” Further, the affiant asserts, “(ilmmediately prior to the execution of the First Note, Gannett was in the management and operational control of a significant portion of IRI’s business, and implied that if IRI did not immediately execute and deliver the First Note to Gannett, that Gannett would cease performing the Services, the result of which would have been to put IRI out of business.” Similarly, “(ilmmediately prior to the execution of the Second Note, Gannett implied that if IRI did not immediately execute and deliver the Second Note to Gannett, that Gannett would immediately initiate action against IRI to enforce the First Note." Due to Gannett’s failures of performance, the affiant asserts, “IRI did not have sufficient financial resources to pay Gannett the amounts demanded,” and therefore “had no alternative other than to comply with the demands of Gannett and execute the Notes in order to prevent Gannett from immediately ceasing to perform the Services, the result of which would have been to put IRI out of business.”
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the *342 record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, 404 Mass. 14, 17 (1989). The opposing party may not rest on the allegations of the pleadings, nor may it rely on “bare assertions and conclusions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3rd Cir. 1972) (noting that conclusoiy statements, denials, and allegations are insufficient to raise material issues of fact). The opposing parly’s obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet its burden of proof on the issues raised by the motion.
In deciding motions for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See Dawes, 369 Mass. at 553; Mass.R.Civ.P. 56(c); Colley v. Benson, Young & Downs Insurance Agency Inc., 42 Mass.App.Ct. 527, 528 (1997); see also Kelley v Rossi, 395 Mass. 659, 663 (1985).
Under Mass.R.Civ.P. 56(f), a court will defer consideration of the motion “if the party opposing a summary judgment motion shows that it cannot, without further discovery, ‘present by affidavit facts essential to justify [its] opposition.’ ” Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991). Aparty relying on this rule must show that the discovery planned will address the issue raised in the summary judgment motion. “One common reason for the denial of a continuance in this context is the irrelevance of further discovery to the issue being adjudicated in summary judgment.” Id at 308.
GTI argues that it is entitled to summary judgment on its claims under the two notes, and on IRl’s counterclaims, because the language of the Second Service Agreement and of the notes waived and released any claims that IRI might have had against GTI for breach of its obligations under the two agreements. IRI responds that the language relied on is insufficient to constitute waiver or release, and that even if it is sufficient, those documents should be rescinded as having been executed under duress.
With respect to the counterclaim under the First Service Agreement, GTI relies on the language of the Second Service Agreement stating that the First Service Agreement “is hereby terminated without liabiliiy, except with regard to any outstanding payment obligations of IRI... to GTI for services provided up to the Effective Date.” This language, GTI argues, expressly waives any claim IRI might have had under the First Service Agreement. IRI responds that the cited language is not sufficiently clear to effect a release, because it does not use the words “release,” “waiver,” or similar language. It relies on Sharon v. City of Newton, 427 Mass. 99, 104 (2002); Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 289 (1993); Horner v. Boston Edison Company, 45 Mass.App.Ct. 139, 143 (1998). These cases enforce releases containing such words, but they do not establish a rule requiring them.
The language in issue here, like any contract language, must be construed according to its plain meaning, in light of its context in the agreement as a whole, and in consideration of the nature and circumstances of the underlying transaction. Here, the nature and circumstances of the underlying transaction are apparent upon a reading of the Second Services Agreement itself, together with the first note and the security agreement, which were executed simultaneously with it. The affidavits submitted confirm the same circumstances. In substance, it appears, IRI was behind in payments for services under the First Services Agreement, and was not in a position to bring its account current, but nevertheless wanted the services to continue. GTI was willing to forbear from immediate collection, and to continue providing services, provided that it received unconditional assurance of, and security for, ultimate payment on a fixed schedule. To accomplish these mutual goals, the parties agreed to trade GTI’s unsecured claim for the unconditional promise of a secured note, along with waiver of any claims or defenses that might generate uncertainty as to ultimate payment. The language they adopted in the Second Services Agreement, reciting that the First Services Agreement “is hereby terminated without liability,” except under the note, effectively accomplished that result.
*343 As to count II of the counterclaim, alleging breach of the Second Services Agreement, GTI relies on the language of the second note, which states that IRI’s obligation thereunder “shall be absolute and unconditional and shall not be subject to any defense, setoff, counterclaim, or recoupment which may arise out of, under or in connection with such Telemarketing Sales Agreement or by reason of any indebtedness or liability any time owing by GTI or IRI.” Here again, the documents clearly reflect the overall nature and purposes of the transaction: GTI exchanged an unsecured and potentially disputed claim for a secured and unconditional promise of payment on a specified schedule, while IRI exchanged an account payable, with a risk of immediate collection action, for a deferred payment schedule. The language of the note unambiguously reflects the parties’ intention to resolve finally all disputes between them.
IRI suggests, in its memorandum and in the affidavit of its chairman, that the notes lacked consideration, because the services provided for in the contracts were not properly performed. Those services were not the consideration for the notes. Rather, as the notes themselves expressly state, consideration was provided for each in the form cancellation of the outstanding account payable. However disputed the underlying arrearage might have been, based on claimed inadequacy of the services, cancellation of the arrearage, and forbearance from immediate action to collect, constitutes consideration.
IRI argues that summary judgment should not be granted at this time because it has not had an opportunity to take discovery. Invoking Mass.R.Civ.P. 56(f), it asserts that discovery will yield evidence of GTI’s failures in performance of the services under the contract. This argument does not avoid summary judgment, because such evidence would not address any issue material to this motion. As discussed, the claims arising from GTI’s alleged failures of performance are barred by the waivers set forth in the contract documents. Evidence in support of those claims would have no bearing on the waivers.
At argument on the present motion, IRI added a theory not raised in its memorandum, to the effect that the notes are subject to rescission because it executed them under duress. In support of this theory, it relies on the assertions in the affidavit of its chairman to the effect that it signed the first note under threat that GTI would cease providing services, and the second under threat that GTI would act to enforce the first.
To avoid enforcement of an agreement on the ground of duress, the parly asserting duress must show that, “(1) he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will ... As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values. The elements of economic duress have also been described as follows: ‘(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; (3) that said circumstances were the result of coercive acts of the opposite party. Merely taking advantage of another’s financial difficulty is not duress. Rather the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion . . . The assertion of duress must be proved by evidence that the duress result from the defendant’s wrongful and oppressive conduct and not by plaintiffs necessities.’ ” International Underwater Contractors, Inc. v. New England Telephone & Telegraph Co., 8 Mass.App.Ct. 340, 342 (1979).
A party seeking rescission based on duress must demonstrate that the other’s conduct “caused him to enter into the contract ‘under the influence of such fear as precludes him from exercising free will and judgment.’ ” Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 22 (1983), quoting Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). Moreover, not eveiy fear having that effect will suffice; the fear involved must arise from “pressures applied unlawfully or wrongfully.” International Underwater Contractors, Inc., 8 Mass.App.Ct. at 342. Neither threats to take actions that are not wrongful or unlawful, nor such actions themselves, constitute duress such as to support rescission or excuse nonperformance. Id. at 346. Absent compelling circumstances, the availability of a reasonable alternative, such as a legal or administrative remedy, will defeat a claim of duress. See Ismert and Associates v. New England Mut. Life Ins., 801 F.2d. 536, 549 (1st Cir. 1986); see also Delaney v. Chief of Police of Wareham, 11 Mass.App.Ct. 398, 408 (1989).
The evidence IRI offers falls far short of this standard. Assuming that GTI had failed to perform properly, and that that failure caused IRI’s financial distress, IRI has failed to offer any evidence that GTI exerted any pressure wrongfully or unlawfully. A threat to cease providing services in the absence of payment hardly rises to that level, nor does a threat to enforce a promissory note. Nor has IRI offered anything to indicate it lacked any reasonable alternative. Any defenses it now claims it has to the first note would have been at least as available to it at the time of the claimed threat of enforcement. In sum, it is apparent that the plaintiff is entitled to judgment as a matter of law.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiff Gannett Telemarketing, Inc.’s Motion for Summary Judgment is ALLOWED.