van Gestel, Allan, J.
This matter comes before the Court on an application of the plaintiff, Zabota Community Center, Inc. (“Zabota”), seeking certain preliminary injunctive relief against the defendants Irina Frolova (“Frolova”) Zdorovie Senior Services, Inc. (“Zdororvie”) and Max Mazaev (“Mazaev”) (collectively, the “defendants”). What is involved are rights and obligations arising from an alleged employment agreement between Zabota and Frolova containing non-competition, non-disclosure and non-solicitation covenants.
In order to prevail on its request for preliminary injunctive relief, Zabota bears the burden of showing: its likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to the defendants from their being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the court should refuse to grant such relief unless the circumstances require it.
Nolan and Sartario, Equitable Remedies, 31 M.P.S. sec. 139 (1993).
The legal history of these kinds of situations or agreements dates back at least to 19th Century England. Lord Macnaughten, in Nordenfeldt v. Maxim Nordenfelt Guns & Ammunition, [1894] A.C. 535, at 565, reminded his readers that enforcement of these kinds of agreements is an exception to the general rule. He said:
The public have an interest in every person’s carrying on his trade freely: so has the individual. All interference with individual liberty of action in trad *223 ing, and all restraints of trade themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable reasonable, that is, in reference to the interest of the parties concerned and reasonable in reference to the interest of the public, so framed and so guarded as to afford adequate protection to the party in whose favour it is imposed, while at the same time it is in no way injurious to the public. That, I think, is the fair result of all of the authorities.
Massachusetts adopted Lord Macnaughten’s statement as early as 1922. See Sherman v. Pfefferkorn, 241 Mass. 468, 474 (1922).
More recently, the law has been recited as follows:
Employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer. Novelty Bias Binding Co. v. Shevrin, [342 Mass. 714, 716 (1961)]. Such legitimate business interests might include trade secrets, other confidential information, or, particularly relevant here, the good will the employer has acquired through dealings with its customers. See All Stainless, Inc. v. Colby, [364 Mass. 773, 779-80 (1974)). Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. Richmond Bros, Inc. v. Westinghouse Bdcst Co., Inc., 357 Mass. 106, 111 (1970).
Marine Contractors Co., Inc. v. Burley, 365 Mass. 280, 287-88 (1974).
Both Lord Macnaughton and the SJC in Marine Contractors were speaking about employee restrictive covenants like those said to be in issue here.
Good will is a broad term and encompasses a variety of intangible business attributes such as the “ ‘name, location and reputation, which tends to enable’ the business ‘to retain [its] patronage.’ ” Slate Co. v. Bikash, 343 Mass. 172, 175-76 (1961). A company’s positive reputation or position in the eyes of its customers or potential customers is an element of good will. Marine Contractors Co., Inc., supra, 365 Mass. at 287-89. Good will is also generated by repeat business with existing customers. Id. Good will is a legitimate business interest that a company is entitled to protect. Kroeger v. Stop & Shop Co., Inc., 13 Mass.App.Ct. 310, 316 (1982).
A non-competition agreement, to be enforceable, also must be reasonable in geographical scope and length of time. See, e.g., Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228 (1975); All Stainless, Inc., supra, 364 Mass. at 779-80; Becker College of Business Adnm. & Secretarial Science v. Gross, 281 Mass. 355 (1933). The one-year period stated in the alleged agreement with the defendant Frolova is certainly reasonable.
Contracts similar to that alleged here “are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship [she] may later suffer through the loss of [her] livelihood.” Sentry Ins. v. Firnstein, 14 Mass.App.Ct. 706, 707 (1982). However,
[t]he consequence of every covenant not to compete ... is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time. That fact alone does not make such covenants unenforceable.
Marine Contractors Co., Inc., supra, 365 Mass. at 289.
Zabota and Zdorovie are competitors in the operation of senior day-care facilities focused on elderly persons of Russian origin or descent. Mazaev is a former employee-at-will of Zabota who was fired by Zabota when the latter learned that Mazaev was planning to open his own facility.[2] Ultimately, nearly ayear after his firing by Zabota, Mazaev opened Zdorovie. Frolova now works at Zdorovie.
Here, the basis for Zabota’s request to enjoin Frolova, as well as the charges that Zdrorovie and Mazaev are improperly interfering with Zabota’s contractual rights, rests almost entirely on the validity of Frolova’s non-competition agreement. That agreement, however, at this time at least, may well be wholly unenforceable.
Zabota concedes — indeed, proudly touts — that Frolova, after about one year’s employment, at-will and without any agreement, was told, forcefully, by Alex Matov, the President of Zabota, that unless she signed the agreement she would be fired the next day.[3] Frolova, at that time, was a low level employee, earning about $10 per hour. She was, and is, a Russian citizen, living and working legally in this country since 2001. She grew up and was educated wholly in Russia and Russian is her first language. In fact, she is said to have a very limited command of English. For this reason, among others, she avers that she did not understand what she was signing.
Still further, her son still lives in Russia, with Frolova’s elderly parents, and Frolovasends most of her earnings to Russia for their support. She claims not to have understood the agreement and to have signed it out of fear of losing her job. She was given no consideration for signing the agreement other than not being fired on the spot.
Conduct by one party which causes another to enter into a contract “under the influence of such fear as precludes [her] from exercising free will and judgment” constitutes a basis for avoiding the con *224 tract. Restatement: Contracts, secs. 492, 495. Williston, Contracts (Rev. ed.) sec. 1603. See Carey v. Fitzpatrick, 301 Mass. 525, 529.
Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). See also Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 22 (1983); Delaney v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 406-07 (1989).
There is clearly a factual issue as to what Frolova understood, as to how she was approached by Matov and as to what compelled her to sign the non-competition agreement. On the present record, in which Zabota has the burden of persuasion, it cannot be said that it has a likelihood of success on the merits in establishing a binding agreement with Frolova. Without that agreement, the rest of Zabota’s claims are similarly not likely to succeed.
Further, “(e]conomic harm alone . . . will not suffice as irreparable harm unless ‘the loss threatens the very existence of the movant’s business.’ Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987).” Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 227-28 (2001). No such threat has yet been demonstrated by Zabota here.
Lastly, as noted above, protection of an employer from ordinary competition is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. Richmond Bros, Inc. v. Westinghouse Bdcst. Co., Inc., 357 Mass. 106, 111 (1970).

ORDER

Having heard the parties and reviewed their filings, this Court is not convinced that the plaintiff has carried its burden to show its likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; or that its harm, without the injunction, outweighs any harm to the defendants from their being enjoined. Consequently, the plaintiffs request for preliminary injunctive relief is DENIED.
This denial is without prejudice to the plaintiff seeking the same or similar relief if, after some discovery, a stronger record can be presented.
Further, the defendants are advised not to take this ruling as a victory that frees them to improperly compete against the plaintiff, to improperly utilize the plaintiffs confidential information or to improperly contact or communicate with the plaintiff s customers.

Both Mazaev’s termination, he being only an employee at will, and his planning to compete with Zabota, appear to be legally acceptable behavior. On the latter issue, See Meehan v. Shaughnessy; Cohen, 404 Mass. 419, 435-36 (1989).

Zabota cites this exchange as proof that there was consideration for Frolova’s signing the agreement — her continued employment. This Court, exercising its equitable powers, sees it rather differently.